HONORA WHITE *v.* LOUISVILLE, NEW ORLEANS & TEXAS RAILWAY CO.

1. RAILROADS. *Master and servant. Safe appliances. Const.* 1890, § 193.

Liability of a railroad company for injuries caused by defective machinery or appliances exists independently of § 193, constitution 1890, enlarging the rights of employes, and rests on its common law duty to furnish employes safe machinery and appliances. Failure in this regard is the negligence of the company, not of its employes.

2. SAME. *Death of child. Action by parent. Code* 1892, § 663.

It is only where an employe of a railroad company is killed through the negligence of a *fellow-servant* that the action therefor must be brought by the personal representative, under § 193, const. 1890. Where the negligence is that of the company itself, as by failure to furnish safe appliances, the action for the death of a child is to be brought by the parent, under § 663, code 1892. *Railroad Co.* v. *Hunter*, 70 Miss., 471, distinguished.

3. INJURIES CAUSING DEATH.  *Action by parent.  Test of liability.*

The right of a parent, under § 663, code 1892, to recover for the death of a child, depends on whether the child, had it survived, could have maintained an action for the injury.  *Meyer* v. *King, ante,* p. 1.

4. SAME.  *Coupling.  Negligence.  Injury to brakemen.*

In an action against a railroad company for the death of a brakeman, crushed while coupling, where there is testimony that the cars were of different height and had different kinds of drawheads, so that they did not come squarely together, thus making the coupling difficult; that the bumpers were broken on one car, and that the spring for holding the drawhead of the other in place had been removed, leaving it "to play loose;" that these defects were not known to deceased or readily observable; that it was necessary to go between the cars to couple, and that deceased, while coupling in the usual way, was crushed by the cars, it was for the jury to say whether the appliances were suitable, and whether deceased was guilty of contributory negligence.

5. COUPLING.  *Failure to use stick.  Proximate cause.*

In such case, failure of deceased to observe a rule of the company requiring the use of a stick in coupling, will not preclude recovery, if such failure was not the proximate cause of the injury, it being shown that, even with the stick, it was necessary, in this coupling, to go between the cars, and that its use would not have prevented the injury.

6. RULE OF COMPANY.  *Habitual disregard.  Evidence.*

Evidence of the habitual disregard of a rule of the company by its employes, with the knowledge and approval of the Company, is competent as tending to show an abandonment thereof.  *Railroad Co.* v. *Rush,* 71 Miss., 987, distinguished.

FROM the circuit court of Warren county.

HON. J. D. GILLAND, Judge.

The facts are stated in the opinion.

*Magruder & Bryson,* for appellant.

1. The right of recovery, in this case, does not rest on our constitution, but on the common law liability of defendant for failure to provide safe machinery and appliances for its employes; and upon the statute giving the parent the right to sue.  The liability existed before the constitution, and is independent of it.

2. The death was caused by the defective coupling appliances. The bumpers were broken off and the drawhead played loose, because the spring holding it in place had been taken out or lost. The cars were of different heights, and this prevented coupling in the usual way. That this constituted negligence on the part of the company, see *Le Clair* v. *Railroad Co.*, 20 Minn., 9; 2 Thompson on Negligence, 972; 14 Am. & Eng. Enc. L., 848; 43 Ill., 338; 71 *Ib.*, 295; 18 N. Y., 225. There is no evidence that Gale knew of these defects, nor is there any evidence that the condition of the appliances was obvious. It cannot be presumed that he knew of these several defects.

3. The violation as to the rule of the company as to the use of coupling sticks will not defeat a recovery. It is shown that observance of the rule would not have prevented the accident. Disobedience of a rule should not forfeit the right to recover, regardless of whether it occasioned the injury. It is evident that failure to use the stick was not the proximate cause of the injury. It is clear, from the evidence, that the coupling could not be done with the stick. 75 Iowa, 683; 14 Am. & Eng. Enc. L., 908. *Railroad Co.* v. *Rush*, 71 Miss., 987, does not apply. It is shown that the rule was habitually disregarded. It was impracticable, and never intended to be observed. It is competent to show this, in order to show acquiescence by the company. 30 Minn., 234; 98 Mo., 62; 32 Am. St. R., 395.

*Mayes & Harris*, for appellee.

1. This is an action, by a mother, to recover for the death of her adult son. Plaintiff had no right of action after the adoption of constitution of 1890. 70 Miss., 471; 69 *Ib.*, 848; 63 *Ib.*, 509.

2. Deceased, when injured, was violating a known rule of the company in failing to use the coupling stick. Some evidence, it is true, was offered to show a disregard of the rule by the employes, but this could not affect the case. *Railroad Co.* v. *Rush*, 71 Miss., 987; 51 *Ib.*, 637. Deceased was at-

tempting to make a coupling on a curve, and, even with good drawheads, coupling is there much more difficult than on a straight track. *Tuttle* v. *Railroad Co.*, 122 U. S., 189. While there is some testimony to the effect that the drawheads were out of order, it is a mere matter of conjecture how deceased was killed. The burden was on the plaintiff, and it is not shown whether the catastrophe was caused by want of the spring in the drawhead, or by the drawhead playing loose, or the curve on the track, or the failure to use a coupling stick; nor does it appear whether deceased was otherwise negligent. The peremptory instruction was therefore proper. 70 Miss., 332; 69 *Ib.*, 848; 61 *Ib.*, 468; *Ib.*, 417.

3. Plaintiff's right of recovery, if it exists at all, is given by the constitution of 1890, which gives a right of recovery to employes which did not exist at common law, where injury is caused by defective appliances, as well as when it is caused by negligence of a fellow-servant. The rule laid down in *Railroad Co.* v. *Hunter*, 70 Miss., 471, cannot be confined to cases where the injury causing death resulted from the negligence of a fellow-servant. The provision of the constitution undertook to deal with the whole subject, and regulate rights of action in all cases of injury to employes of railroad companies. The reasoning in *Railroad Co.* v. *Hunter* applies with equal force where the injury occurs from defective appliances as when the negligence is that of a fellow-servant. Therefore, the right of action, in cases like this, must be confined to the legal representative.

WHITFIELD, J., delivered the opinion of the court.

This is an action brought by appellant, as mother and sole surviving parent, to recover damages for the loss of support and maintenance. She had a right, reasonably, to expect her son, the party killed, would continue to provide for her during his natural life, the declaration—which is drawn with great care—alleging that, in his lifetime, he had helped to support

and maintain her, and the mother testifying that it was the son's regular habit to turn over to her, on drawing his wages, fifty dollars per month. The ground of liability is the common law duty of the appellee to provide safe machinery and appliances for its employes. The remedy to enforce this liability in favor of appellant, in the case made in this record, is based properly on § 663, code of 1892. The negligence alleged is not the negligence of a co-employe, but the negligence of the company itself. *Railroad Co.* v. *Hunter*, 70 Miss., p. 471, therefore, does not apply. The ground of liability on which this case is rested existed before the constitution of 1890, and is wholly independent of it. That instrument did not take away any existing ground of liability; it added new ones theretofore denied by our laws. The single question here is, could the son, had he survived, have maintained an action? If so, then, under § 663, code 1892, the appellant can. *Meyers* v. *King*, *ante*, p. 1. The respects in which the appliances and machinery are charged to have been defective are, first, that the bumpers were broken off the freight car, which, it is alleged, would otherwise have prevented the collison to the extent of their projection—six or seven inches; second, that the drawheads were defective, the Miller drawhead having had the spring belonging in it taken out, so that it played loose, and did not meet the drawhead of the freight-car squarely, but was pushed to one side, the drawheads thus passing each other, and the cars crashing together; third, that the cars were defective in this, that they had different kinds of drawheads, and that there was a difference in the height of the cars of one inch, which prevented, as alleged, the coupling in the usual way, so that the deceased failed in guiding the coupling pin to its place.

At the conclusion of the testimony, the court gave a peremptory charge for the appellee. There was a motion for a new trial, which was overruled, and the errors assigned here are the granting of this peremptory instruction and the overruling of the motion for a new trial.

As regards the "bumpers" there was testimony as follows: "The bumpers, which are iron projections on the end of the freight car, on each side of, and close to the drawhead thereof, project six or seven inches; they are intended to keep the car from coming in too close contact with the other cars to which it is to be coupled, but were broken off of the flat car at the end of which the coupling was made; that these bumpers are used on the defendant's road; that the flat car was out of repair, because there were no bumpers on the end" where the coupling was attempted to be made; that these bumpers "on the ends of the cars would keep them apart," and "protect the drawheads from injury," and would have kept "the cars from getting too close together if there had been any on the flat car;" and it was shown that Gale, the deceased, was "a little, slight man, weighing about one hundred and twenty or twenty-five pounds."

As regards the Miller drawhead, it was testified that it was provided with a spring, on the left-hand side on this coach, intended to press the Miller drawhead over towards the right, so that the point of it would be exactly in the center of the car, but that this spring had been taken out of the Miller drawhead on this coach, and, for want of it, this coach was not in running order, or in fit condition to use, but ought to have been sent to the shop; that one Buck West had this identical spring, taken from the Miller coupler, with him, at the time of the injury, at the shop for repairs, intending to replace it on the coach when it should be brought there, it appearing that this coach had just been "laid up in the shop to have its wheels remedied," and "was shopped again immediately after the accident." It was further testified that the effect of taking out the spring was to allow the Miller drawhead to play loose, so that if anything struck it not exactly on the point, it shoved it to one side, and that "this Miller drawhead played loose in this case," and that "this coupling was very difficult to make, owing to the difference in the drawheads and their differing heights." The

conductor testified that the brakemen were expected to make these couplings between the Miller coupler and the ordinary drawhead when called on, and that to do it, it was necessary to go in between the cars.

The defect in the cars consisted further, as testified, in the difference in height referred to, making it impracticable to make the coupling in the usual way, the coupling having to be made " by taking the link out from the common drawhead and putting it on top and passing the pin through it, so as to couple it on top of the Miller drawhead, and not in the opening left therein for that purpose, as the common drawhead was so much lower than the Miller drawhead that the link would not come up to the Miller coupler opening in the ordinary way."

Ought not the question of fact as to the sufficiency and safety of these appliances to have been submitted to the jury? The law is imperative in demanding that railroad companies shall furnish its employes, engaged in the hazardous work of coupling cars, safe and sufficient appliances. 2 Thompson on Negligence, 989.

In *Le Clair* v. *Railroad Co.*, 20 Minn., p. 9, the cars were of different heights, so that the link could not enter the draft iron of the car without the lifting of the latter; "it slipped to one side, and they came together, and caught the brakeman between the cars." The court held the company liable, and that no presumption was to be indulged that the brakeman knew, or ought to have known, of the negligence of the company in not having bumpers and cars of same height, and adds that "less than one inch would make all the difference in the world," and that "superhuman accuracy of vision" is not expected of employes in detecting such defects in machinery. In *Railroad Co.* v. *Frederick*, 71 Ill., 290, the appliances were held defective, because the drawbar of the caboose was too short, as a result of which the caboose and the car came together, producing the injury; and the court adds that, " the machinery and cars furnished for use should not be so unskillfully constructed that the slightest

indiscretion on the part of the operatives would prove fatal.''
It ought to be ruled that there is no testimony showing that
merely looking at the Miller drawhead would disclose the ab-
sence of the spring, or that, situated as he then was, at the
time of attempting the coupling, he discovered, or could have
discovered, the difference in the height of the drawheads on
the two cars. We do not think, under the testimony, the
court should have taken the question of contributory negligence
from the jury. It seems to us just the kind of case—owing to
the variety and complication of its facts—in which the question
whether the deceased's own conduct proximately ˜caused his
death, should have been left for solution to the sound common
sense of the jury applied to the case on the whole evidence.

It is insisted, earnestly, however, that the deceased violated
the company's rule in attempting to make this coupling with-
out the coupling stick which had been furnished him, and
*Railroad Co.* v. *Rush*, 71 Miss., 987, is invoked. On this
point there is testimony by Westbrook that a ''man can-
not, by using the stick, keep from exposing his body between
the cars; that by holding the stick by the handle, and picking
up the link with the notch on the other end of it, there would
only be three or four inches between the switchman's hand and
the other bumper; that the stick is too short, and that brake-
men, as a rule, pay no attention to the stick, but couple with
their hands;'' by Rochelle that ''you could not stand on the
outside and couple the cars;'' by the conductor himself that
you must go between the cars to make the coupling; and by
Colder that in the thirteen experiments made at the trial—eight
at the yard on a straight track and five where Gale was killed—
the employe did not use a coupling stick, but his hands only,
and that ''it was plain that he could not have handled the link
in making such a coupling with the coupling stick, and that
the officers of the road and Superintendent Casey    .    .    .
stayed right by, and made no objection to the switchman using
his hands.''

In Rush's case the employe had the stick, and it was not shown that he could not properly have uncoupled with the stick, but chose to lay it down, and attempt to do with his hands what he might have done with the stick, though with difficulty.    It was further shown in that case that there had been no violation of the rule to the knowledge of the company, except in occasional instances, and that employes violating the rule, or saying they could not couple with the stick, had been promptly discharged upon discovery of such violation.    Plaintiff thus admitted that he might have pushed the pin out with the coupling stick, the case being one where the effort was to uncouple.    The facts clearly differentiate the cases.

It is obvious from this testimony that, if the coupling stick had beed used, the injury would not have been prevented.    The violation of a rule like this one cannot be interposed as a defense in a case where the testimony clearly shows that the failure to observe the rule did not contribute to the injury.    The appellant's son was commanded to make the coupling by the conductor, who says "it could not be made except by going between the cars;" it was usual to make the coupling without the stick; one could not make this coupling with the stick.    To hold, in a case like this, that the violation of a rule which, if observed, in no manner prevents the injury, works a forfeiture of the right of action, would manifestly be to sacrifice substance to shadow.    That which vitalizes the rule, and makes the failure to observe it a complete defense, is the fact that, in the particular instance, such failure contributed proximately to the injury. .

In *Alexander* v. *Railroad*, 83 Ky., 593, where a running switch was made, in violation of express rule, the court says: " Conceding appellant knew such rule existed, still we do not think his violation of it is a sufficient defense; for the evidence tends to show that it is the most, if not the only, practicable way to put cars on Cadahan's switch, and had been so habitually resorted to before appellant was employed as conductor

as to raise the presumption appellee was aware of and approved it." Many authorities are cited in 14 Am. & Eng. Enc. of L., p. 908, to the proposition squarely announced in the text, that even where an employe knowingly and intentionally violates a rule, such violation must be the proximate cause of the injury to prevent a recovery, and we approve this as sound. It was so held in *Reid* v. *Burlington*, 72 Iowa, 166; 90 Ala., 68; and is laid down as settled law in 32 Am. State Rep., 394, note; and it is there said, citing authorities, that "evidence of an established usage at variance with the rule which was known and acquiesced in by the superior officers of the company, is admissible to show an abandonment of the rule to the extent of the usage." It follows that the court erred in excluding the testimony offered in this case to show the habitual disregard of the rule by employes within the knowledge and with the approval of the company.

But it is urged that there is no testimony showing how the deceased came to his death; that all is pure speculation. This mistakes the testimony. The conductor says: "At the time of the accident I was standing about fifteen or twenty feet from Gale. He was facing me, and standing sideways between the two cars, holding the link. . . . Gale was caught across the chest, and it was mashed, and his left arm was broken."

We express no opinion as to the weight of any of this testimony, but we think it was clearly error to grant the peremptory charge, and the judgment is

*Reversed, and cause remanded.*