ILLINOIS CENTRAL RAILROAD CO. *v.* JULIA A. WOOLLEY.

| 77 | 927 |
| 78 | 97 |
| 77 | 927 |
| 79 | 611 |
| 77 | 927 |
| 84 | 146 |

1. RAILROADS.   *Track.   Negligence.   Employe.*

An action for injuries, resulting in the death of an engineer while running his locomotive, cannot be maintained by his widow, unless a want of ordinary care on the part of the railroad company, or its other servants, was the proximate cause of such injuries.

2. SAME.   *Track.   Reasonable care.*

Railroad companies are not bound to furnish their employes an absolutely safe track, the requirement being that they shall be reasonably careful in keeping it in safe condition.

3. SAME.   *Sidings.   Grade.*

Railroad companies should exercise reasonable precautions to prevent dangerous results, but it is not in itself actionable negligence for them to have grades on their main tracks or sidings, so far as their employes are concerned.

4. SAME.   *Case.*

> Facts considered as to the liability of a railroad company in a case
> where the injuries were sustained in a collision resulting from a
> box car being carried by a storm at night down the incline of a
> switch on which it was standing, to the main line, the car having
> its brakes properly set, but not being blocked, as required by the
> rules of the company in such cases.

FROM the circuit court of Lafayette county.

HON. Z. M. STEPHENS, Judge.

The appellee, Julia A. Woolley was plaintiff, and the appellant railroad company, defendant in the court below. The facts are stated in the opinion of the court.

*Mayes & Harris,* for the appellant.

The proximate cause of the injury in this case was the negligence of some fellow-servant of the engineer—either the engineer, fireman or brakeman on the train who had handled the car, or of the depot agent. The negligence which was the proximate cause of the injury, and it is to the proximate cause alone that the court will look, was the negligence of a fellow-servant, for whose negligence a right of action was given for the first time by the constitution of 1890, and being such, must be governed by the case of *Illinois, etc., R. R. Co.* v. *Hunter,* 70 Miss., 471.

In order to test the question as to the proximate cause in this case, taking the facts as we find them in the record, the conclusion is irresistible that notwithstanding the condition of the track, the injury could not have occurred without the intervening negligence of those who handled the car which rolled on the track, either by failure to set the brakes or leaving the car in an improper position on the track.

Under the rule laid down by all the authorities in determining what is the proximate cause of an injury, it is clear from this record that the condition of the track, conceding it to be defective, was the remote cause of the injury, and, therefore, not to be considered in determining the rights of the

parties in the case. The negligence, therefore, being the negligence of a fellow-servant for whose negligence the deceased would have had no right to sue but for the provision of the constitution of 1890, and that clause of the constitution gives the right in such cases to the legal or personal representative of the deceased. Cooley on Torts, p. 73.

So it is perfectly clear that, notwithstanding the fact that the safety switch was not furnished at Lamar station, notwithstanding the fact the track was on the grade, this track had been used for years without injury or danger to any one. It is shown by the testimony of all the witnesses that this track could only be dangerous when the rule of the company in regard to setting the brakes of the cars left on this track was violated. In other words, with or without a safety switch, the track is shown to be perfectly safe, if the rule of the company in regard to setting brakes on cars left thereon was complied with.

Therefore the cause of the injury in this case was the failure to comply with this rule, or due to some other cause intervening, for which the railroad company would not be responsible. If it was due to a violation of the rule in regard to setting brakes, then it was the negligence of a fellow-servant of Woolley, and consequently, under the law as it then existed, the widow had no right of action.

But if we are mistaken in this, and we do not think we can be, there are other manifest reasons why the plaintiff cannot recover in this case, and to those points we now address ourselves.

(1.) We respectfully submit that there has been a failure on the part of the plaintiff to make out a case against the railroad company on the question of negligence. It is settled in this state, beyond any dispute, that in a case of this character, that is, in a suit by an employe against a railroad company to recover for injury sustained, the burden of proof is on the plaintiff to show negligence. No presumptions are in-

dulged in his favor.    This is settled in the case of *Short* v. *New Orleans, etc., R. R. Co.,* 69 Miss., 848.

So far as we can gather from the drift of the questions asked by the plaintiff on the trial of this case, and the character of proof offered, the contention is that the railroad company was negligent in regard to the side-track on which the car was standing, and that the station agent was negligent in his attention to the box car which was left on the track.

In regard to the conduct of the station agent, it is shown beyond any dispute, by four witnesses, that the rule of the company, in regard to the setting of the brakes on a car left standing at a station was complied with.    The station agent says he saw the brake set, and knows that the brakes were properly set.    He testifies, further, as is shown in the statement above, that he had handled the particular car which had been on that side-track for two or three days, and he had set the brakes himself, and knew that the brakes were in good condition.    In addition to this, we have the positive testimony of Littlejohn, the brakeman who set the brakes, and of the engineer, Ruffin, who says he was sitting in his cab looking out at Littlejohn when he set the brakes, and of Muse, conductor of the train.

Those were the last railroad employes who handled that car before the collision occurred, and they all testify that the car was setting on that part of the side-track which is shown by all the witnesses, even Gallagher himself, to have been level. The car was not setting on a grade.

Of course, we recognize the fact that as against this there is the circumstance that this car did by some means get on to the main line, and was struck by Woolley's train; but it is shown positively that there was an unusual wind that night, blowing from south to north, and it is shown also by Ruffin, the engineer, and by Muse, the conductor, that there were some boys about that car at the time they were moving it.

The station agent testifies positively that at 5:30, when he went to his supper, the car was standing where it had been left by the train which had last moved it — that is to say, on the side-track opposite to the cotton platform, where the track was level. He returned to the depot at 6:30, an hour later, through the rain, his lantern being extinguished by the storm. He says he did not notice the car, because there was nothing to cause him to notice it, as he had left it in a safe place with the brakes properly set. He states it was not his duty to stay and watch the car continuously, and it is not improbable that some mischievous boys about the station may have tampered with the brakes during the absence of the station agent, and, this severe and sudden wind arising, the car was blown from the level part of the track to the incline and then rolled out to the main line. If this were the fact, the company was not liable. It was not responsible for the action of the wind; nor could it be held liable for the acts of any malicious or mischievous persons who might have tampered with the car during the absence of the station agent.

So far as the testimony of the station agent, and those who handled the car, is concerned, all was done that should have been done. The rule governing the station agent is set forth in the record.

Many independent causes intervened to have gotten this car out of its proper position and onto the main line—the tampering with the brakes, the wind, or, what was at that time not a very uncommon thing in that part of the state, the act of train-wreckers, taking advantage of the dark.

In regard to the condition of the track, we think, manifestly, no negligence is shown, because it is conclusively shown, even by the witness Gallagher, plaintiff's star witness, that this track was perfectly safe for cars with the brakes set, and it was also shown by Brown that no safety switch was necessary at that place, and that the track then being used, as it was, as a

house track as well as a passing track, the safety-switch was not required. The grade in the track was not sufficient to require one. The condition of the track was clearly the remote cause of the injury.

We think the plaintiff has failed to show negligence. He has failed to show any violation of any rule or regulation of the company, or the breach of any duty that the railroad company owed to the deceased.

2. But, conceding for the sake of this discussion that there was sufficient evidence on this line for the jury to pass on, we respectfully submit that the contributory negligence of Woolley, the engineer, is made out by the overwhelming evidence in the case.

In the first place, as we have shown above, there was no dispute whatever as to the existence of the two rules, one being that conductors and engineers, when approaching train order offices, must have their trains under control, and the rule, known as rule 89, that in case of storms and fogs, necessary additional precautions must be taken by trains to insure safety from rear end collisions.

And in addition to that, there can be no dispute as to the positive law of the state of Mississippi which forbade the running of trains at a greater rate of speed than six miles an hour through cities, towns, and villages. The plaintiff's testimony shows that Woolley was violating each of the above named rules and the statute of the state. There is no pretense that he was obeying the rules of the company or the law of the state at the time this injury occurred.

The whole line of the plaintiff's effort is an attempt to excuse this negligence, by showing an habitual violation of the rule as to having trains under control. There is no attempt to show that rule 89 was ever violated at the time with or without the knowledge of the company, but there is an attempt to show that the rule in regard to having trains under

control was violated, and .that the law in regard to running through towns at a greater rate of speed than six miles an hour was violated repeatedly. But there was an utter failure to show that knowledge of this fact was brought to the superior officers and agents. The fact that the conductor knew it, or the conductor participated in it, could not excuse the deceased, because it has been held in this state that an employe who is acting under the direct command of the conductor in violating a rule of the company, cannot recover upon that ground, and is not excused even admitting that the conductor was a superior agent to the party injured. *Richmond, etc., R. R. Co.* v. *Rush,* 71 Miss., 987.

Now, the court must bear in mind along this line, another thing, that even conceding that it is a fact that trains run through stations where they do not stop, or are not required to stop, at a greater rate of speed than six miles an hour, this does not mean that they run through without their trains being under control so that they could be stopped in an emergency.

Of course, there are instances of violation of this rule on the part of engineers who are personally interested in making up time. The engineer who loses time, or who runs his train behind time and is late at stations is discredited, and it may be undoubtedly true that there are cases in which engineers, in order to keep up their record, having lost time for some cause, violate the rule. But this amounts to nothing unless it is shown that this violation was known and acquiesced in by the superior officers and agents who promulgated the rule.

This rule, it is shown by the testimony of every witness who speaks to it, and that means every witness in the case, is a well-known rule of the company, in existence at the time of this accident, and in existence now, and always in existence. There is no pretense that this rule has ever been abrogated.

Now, it is settled law in this state, and elsewhere, that the violation of a rule of the company is negligence, that where an

injury results by reason of the violation, the party cannot recover.    This is settled in this state in the case of *Richmond, etc., R. R. Co.* v. *Rush,* 71 Miss., 987, and *Memphis, etc., R. R. Co.* v. *Thomas,* 51 Miss., 637.

In the case of *White* v. *Louisville, etc., R'y Co.,* 72 Miss., 12, this court, delivering the opinion through Justice Whitfield, went very elaborately into this question of violation of rules, recognizing fully the doctrine that where a party is injured in the violation of a rule of the company existing and in force, there can be no recovery.    In that particular case, however, the court lays stress upon the fact that the superintendent of the road knew of and made no objection to the violation of the rule in that particular instance.

It is not necessary to go outside of our own decisions, therefore, for the rule of law governing cases of this character.    This court lays great emphasis upon the fact that in order to excuse the employe who is injured in violation of a rule, it must be shown that the established usage at variance with the rule was known and acquiesced in by the superior officers of the company.

This case, therefore, is distinguishable from the White case because there is an utter failure to show that the violation of this rule was known and acquiesced in by the officers of the company.    Every attempt along that line failed, and it is practically impossible that each violation of this rule should have been known to the officers of the company, because they are not proven to have been present or to have had any knowledge whatever of the infraction of the rule.

The same doctrine is clearly announced in the case of *Alabama Great Southern Railroad Co.* v. *Roach,* 21 South. Rep., 132; see 3 Elliott on Railroads, secs. 1314, 1582.

The doctrine as announced by Mr. Elliott is clearly set forth in Bushnell on Personal Injuries, sec. 153.    Before proceeding, however, we wish to call the attention of the court to one

sentence from Elliott, to wit: "Courts generally hold that if it is customary to disobey the rule, then disobedience will not defeat a recovery."

The court will see that the author refers to sundry cases in the note to this sentence. We cite them below. We have carefully examined all those cases to which we have access, and we find they do not support the principle as stated by Mr. Elliot—that is to say, we have been unable to find any case in which it is held that the mere custom of disobeying the rule will defeat a recovery. Every one of the cases referred to by Elliott qualifies the rule by stating that the long-continued disregard of rules, known and acquiesced in by the superior officers, will defeat a recovery and justify the inference that the rule has been abrogated. But in every one of the cases referred to by Elliott which we have found, knowledge and acquiescence on the part of the employer is made an essential factor in determining the question as to whether the employe can be relieved, from violating the rule. See *R. R. Co.* v. *Nicholls,* 50 Fed. Rep., 718; *Boone* v. *R. R. Co.,* 98 Mo., 62; *Schaub* v. *R. R. Co.,* 106 Mo., 74; *Chicago R. R. Co.* v. *Flint,* 154 Ill., 484.

The rule is a reasonable one, and is this: When a rule of the company is habitually violated, and this is known and acquiesced in by the company, the company will not be permitted to set up the rule and its violation to defeat a recovery, simply because there has been no express abrogation of the rule. This would be manifestly unjust. So it is estopped by its conduct. But it would be equally unjust and unreasonable to hold that the employes of the company could abrogate a rule by habitual violation of it, without the knowledge or acquiescence of the company or those whose duty it is to promulgate the rules. So where an employe seeks to recover for an injury caused by violating a rule of the company, the burden is on him not only to show a general disregard of the rule,

but that this disregard is known and acquiesced in by the company. The plaintiff has not only failed to show this, but, on the contrary, all the proof offered, so far as it goes, shows that the disregard of the rule was not known to the company. The burden of proof was on the plaintiff to show this; it was the groundwork of his case.

There was a good deal of testimony as to the knowledge of the company of the violation of the six mile statute, and of railroad trains maintaining a higher rate of speed than six miles an hour through towns, but we call the court's attention to the fact that this higher rate of speed through towns is not at all incompatible with having the engine under control.

Every witness in the case testifies that the rule that the engine must be under control was in force. There is testimony that it was disregarded by some, but no evidence that this disregard or disobedience was known to the officers of the company.

Now, as we have above stated, it is conceded that Woolley was violating this rule. He did not have his train under control. The testimony of Turner, the conductor, shows he did not pretend to slacken the speed at all up to the very moment of the injury; that he was running at a rate of speed not less than thirty-five miles an hour, and the fireman says he was running from forty to forty-five miles an hour.

The testimony of Smith is entirely uncontradicted and undisputed, and shows that if the speed of this train had been brought down to twenty-five miles, or below twenty-five miles an hour, and the engineer had been at his post keeping a lookout, the equipment all being what it should be, he could easily have stopped his train in time to avoid the injury, because it is undisputed that the headlight would have revealed the box car on the line for a hundred yards ahead of the train, and he could easily have stopped his train within twenty-five yards. In fact, Smith says that the train, if under control

within the meaning of the rule, could have been stopped by Woolley within twenty feet after seeing the obstruction.

Therefore, we have a case in which the court is bound to say that the violation of the rule of the company was the proximate cause of the injury, because, although the company may have been negligent in regard to its switch track, although there might have been negligence on the part of the agent in regard to setting the brakes on the box car, still, if the rule had been obeyed the injury would not have occurred, and in such case there can be no recovery.

*Slone & Sivley,* for appellee.

The appellee in this case complains of the appellant that her husband was killed by reason of the appellant's negligence in not providing reasonably safe ways and appliances; that deceased was the husband of appellee, and she sues asserting her right of action at common law as recognized by this court in the case of *White* v. *Louisville, etc., R'y Co.,* 72 Miss., 12, and bases her claim upon the fundamental principles of the law that the master is required to furnish reasonably safe ways and appliances, and whenever he negligently fails to do so, and the servant is injured, the latter is entitled to recover. 1 Lawson's Rights, Remedies and Practice, sec. 204, and authorities cited. We do not claim any right of action under sec. 193 of the constitution, nor do we sue under the act of 1896, so that the contention on the part of appellant that this injury occurred because of the negligence of a fellow-servant, and for this reason we are not entitled to recover, has no application to this cause under our theory of the law, as we are not asserting either statutory or constitutional right of action, but are relying simply upon our common law right to sue.

The appellant answers the declaration in this case by pleading the general issue, and under that interposes a special plea of contributory negligence. We respectfully submit that the

record nowhere discloses any contributory negligence on the part of deceased, but if there was, the question of contributory negligence was referred to the jury under the most favorable instructions for the appellant, and therefore the verdict cannot be disturbed on that ground.    Whether the negligence of deceased was the approximate cause of the injury—that is, whether the negligence and the result obtained stood in the relation of cause and effect, is always a question for the jury where the proper inference from undisputed facts is in doubt, or where the evidence is not clear.    31 L. R. A., 587.

It was contended by appellants that it was error for the court not to exclude the testimony of the appellee in the court below. In answer to this contention we say that the facts abundantly justified the court below in overruling appellants' motion to exclude, but if we are mistaken in this proposition, then we contend that appellant cannot avail of this error because it did not rest its case, but went forward and introduced all of its evidence, which, taken together with the evidence for appellee, abundantly made out a case which the jury was entitled to pass upon.    *Grand Trunk R'y Co.* v. *Cummings,* 106 U. S., 700.

We further contend in this case that even though the negligence of a fellow-servant contributed to the injury, yet if the negligence of the master also directly contributed to it, and the action was the result of their combined negligence, still the appellee is entitled to recover.    We have found no authorities in this state directly in point, but certainly this doctrine has been established by courts of high repute and recognized by reputable text writers on the question of negligence.    1 Lawson's Rights, Remedies and Practice, 207, and authorities there cited; Shearman & Redfield on Negligence, 5th ed., secs. 188 and 222, and authorities there cited; *Union Pacific Railroad Co.* v. *Callaghan,* 56 Fed., 988.

The appellants insist earnestly upon the violation of the

rule of the company by the engineer, and impute contributory negligence from the violation of that rule, but where the evidence clearly shows that it has become the fixed custom of the railroad company to violate this rule with reference to the speed of trains through incorporated towns, and their schedule requires that they violate this rule, and all these facts being known and acquiesced in by the superior officers and agents of the company who promulgate these rules, they cannot then shield themselves from a just liability by the fact that an employe was at the time of the accident failing to observe the rule which was not observed by other employes or officers of the company.    *White* v. *Louisville, etc., R'y Co.,* 72 Miss., 12.

*Sullivan & Watson,* on the same side.

One of the appellant's assignments of error is that it should have been allowed to introduce evidence that the village of Lamar is incorporated, and the train on which deceased was killed was running at a greater rate of speed through the municipality faster than six miles an hour.    In answer to this proposition, we would say, affirmative matter in avoidance must be specially pleaded (§ 686, code of 1892).    The statute narrows the scope and effect of the general issue.    Every defense not merely consisting of a denial of the allegations of the declaration must be pleaded specially, or notice thereof given under the general issue.    *Tittle* v. *Bonner,* 53 Miss., 578. It is certain that this proof cannot be made under the special plea of contributory negligence filed in this case.    *Grayson* v. *Brooks,* 64 Miss., 410 ; *Wren* v. *Hoffman,* 41 Miss., 616.    In this case the defendant does not even give notice, under its plea, of special matter to be given in evidence on the trial of the cause.

The only other question involved in the trial of this case is as to the liability of the railroad company for its failure to keep in proper repair its roadbed and appliances.    In this

connection we would ask that the court review and carefully consider the doctrine as laid down in McKinney on Fellow-Servants, p. 78, sec. 29.

We wish especially to call the attention of the court to the review therein contained (pp. 79-82) of the case of *Howd* v. *Mississippi, etc., R. R. Co.,* 50 Miss., 178. Employes of a railroad company are entitled to have, and it is the duty of such company to furnish, safe materials and structures. This duty cannot be delegated to an agent so as to relieve the company from responsibility. For a failure therein, the company is liable to employes for injury and damages caused by reason of such omissions. Rorer on Railroads, p. 1211, *et seq.*

It is the duty of the company not only to furnish a reasonably well constructed and safe railway and track for the use of its employes, but it must also exercise continual supervision over the same, and keep them in good and safe repair and condition. 5 Rapalje & Mack's Digest of Railway Law, 44, citing *Riley* v. *West Virginia, etc., Railroad Co.,* 27 W. Va., 145; *Miller* v. *Southern, etc., Railroad Co.,* 48 A. & E. Railroad Cases, 294, and other cases.

The company is liable when it has knowledge of the defects, or when it ought to have known, or might have known by the exercise of reasonable and proper care on its part in examining and inspecting the same, and this, although the negligence of a fellow-servant contributed to the accident. *A. T. & S. F. R. R. Co.* v. *Holt,* 11 A. & E. Railroad Cases, 206 (29 Kansas, 149). This doctrine seems to us to be the one that has been uniformly announced by the Mississippi authorities, and to be the true doctrine. If a servant is injured by the negligence of a fellow-servant and that of the master combined, he may recover of the master for the injury, for the master is at least one of the two joint wrongdoers in such a case, and as such is responsible. Cooley on Torts, p. 567; McKinney on Fellow-Servants, 34; *Grand Trunk Railroad Co.* v. *Cummings,* 106 U. S., 700.

Argued orally by *J. B. Harris,* for appellant, and by *C. L. Sivley* and *James Stone,* for appellee.

CALHOON, J., delivered the opinion of the court.

The death of plaintiff's husband having occurred on November 25th, 1895, and before the acts of 1896, and he, being an employe of the company, his widow could not sue basing her action on § 193 of the constitution as to fellow-servants, as was held in *Illinois, etc., R. R. Co.* v. *Hunter,* 70 Miss., 471. This she concedes, and therefore she places her right to sue on the case of *White* v. *Louisville, etc., R'y Co.,* 72 Miss., 12, which holds that she may sue where her claim is not on the ground that the death was caused by the negligence of a fellow-servant, but because of the negligence of the company in not providing a safe railway. Such right to sue for the company's negligence that case holds to exist independently of the constitutional provision. It follows that if the negligence of the company showed a want of ordinary care and was the proximate cause of the death in this case, Mrs. Woolley had a right of action, otherwise not.

On this line of inquiry the facts viewed most strongly for her are that the company had a side-track at its station, Lamar; that, starting from its switch junction with the main track, it ran south to the north end of the depot house about four hundred and fifty feet, and thence on south past the house; that from the house north towards the main track there was a down grade, and that this siding had been there as it then was for fourteen years certainly, and how much longer is not in evidence. The proof undisputed is that an empty box car had been on this siding two or three days. About two hours before the accident a freight train had run in on this siding, and had to move this car, but, before leaving, left it where it was before, and a brakesman had set the brakes. The brakes were in perfect order, and of the kind in use for cars of that sort not provided for air-brakes, but the car was not blocked in addition to setting the brakes. This car standing where it then

stood with proper brakes on it could not have been blown down the siding to the switch; it would have blown over first. If, in addition to the application of the brakes, it had had its wheels blocked, the impossibility would have been absolute even if it had not been absolute before. It was standing there when the depot agent went to supper. After dark that night there was a severe wind and rain storm blowing from south to north, or from southwest to northeast. At about 7 o'clock that night Mr. Woolley, the deceased, was the engineer of a passenger train coming south, running at the rate of thirty-five to forty miles an hour, the night being very dark, and his engine ran into this same car, which, by some means or other undisclosed by testimony, had moved from its place at the depot or cotton platform, equally far or farther, down to the switch junction and protruded over the main track. Mr. Woolley was instantly killed.

The rule of duty of a master to his servant is not so strict as his duty to the public who hire his services for transportation. He is held only to reasonable care in furnishing his servants with safe ways, appliances and machinery, and, in an action for damages, the servant is held to make it clear that the negligence of the master was the proximate cause. Nor is a railway company bound to furnish its employes with an absolutely safe track, the requirement being that it shall be reasonably careful in keeping it in safe condition. 14 Am. & Eng. Enc. L., 879.

It is not actionable negligence in itself for a railroad company to have grades on its main tracks or its sidings so far as its employes are concerned. All they can require is that reasonable precautions are taken to prevent dangerous results.

Whether the box car in the case before us was in fact left standing on an incline, or, as the great preponderance of evidence is, on a level beyond the incline, is of no consequence unless the incline was the proximate cause of the injury, and

that some intervening act of negligence of other employes of the company was not the proximate cause.

Because, by reason of the incline, a car might at some time be left unblocked by the disobedience of rules and orders by other employes, and because a wind of sufficient force might some time arise, and might be blowing in the right direction, and might move the car to the main line, and might protrude it over the main track, and an engineer might not see it and might run on it and be killed, is not sufficient to show actionable negligence on the part of the company where the intervening negligence of a servant left the car so it could be so moved. It is perfectly plain that the car with brakes applied was absolutely safe. How it was moved no one can say. We know, however, by evidence uncontradicted, that if the car had its brakes properly applied, the wind could not have done it. "In order to warrant a finding that negligence is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence, and that it was such as might or ought to have been foreseen in the light of the attending circumstances." 16 Am. & Eng. Enc. L., 436.

Now, by the rules of the company in proof, cars left on sidings are required to have their brakes properly set, and, if the brakes are out of order, to have their wheels blocked, and in all cases where they are left on a grade, the wheels must be blocked in addition to the brakes being properly set. If the car in the instant case was left on a level and had its brakes set, the proof undisputed is that it was safe. If it was left on a grade the duty of the employes was both to brake and block it. This car was not blocked. A failure to obey these orders was the negligence of the employes and not of the company, and was the proximate cause of the injury. If these orders had been obeyed, harm was not only improbable, but impossible. If they were not obeyed, the company is not responsible. Remembering that, before plaintiff can recover in her action,

brought when it was, the burden is on her to show that the proximate cause of the death actually was the negligence of the company, and not merely that it might have been so caused, as held in *Illinois, etc., R. R. Co.* v. *Cathey,* 70 Miss., 332, announcing an old and well-recognized principle, and it follows that recovery cannot be had because no safety switch was provided. If this need any further mention, it is enough to say that all employes are chargeable with notice of the rules. By the terms of one of these they knew that some switch tracks were on grades, and that in such cases employes were charged with the duty of braking and also blocking the wheels of loose cars, and they took the risk of obedience to this order. In such shape such cars were absolutely safe, and a safety switch would be useless if orders to keep them properly set were not obeyed.

*Reversed and remanded.*