## ALABAMA & VICKSBURG RAILWAY COMPANY *v.* HEZEKIAH ROOKS.

DAMAGES.    *Proximate and remote cause.*

The acts of a railway company in allowing tank cars, containing cottonseed oil, to escape from a train and run down a grade in the track until they strike an obstruction, breaking the tanks and spilling the oil, from which it flowed into an adjoining pasture, accumulated in low places and there remained for several days, is not the proximate cause of the death of cows, which drank the oil in the pasture and died from its effects.

FROM the circuit court of Warren county.

HON. WILLIAM K. McLAURIN, Judge.

Rooks, the appellee, was the plaintiff and the railway company, appellant, was the defendant in the court below. The plaintiff obtained judgment there, and the railway company appealed to the supreme court.

The suit was an action to recover the value of two cows killed by drinking cotton seed oil, which had escaped from the company's cars. The case was tried upon an agreed statement of facts, from which it appeared: (1) That one of the defendant's switch tracks extended several hundred yards through an open field, or pasture, near the city of

Vicksburg, in which cattle were accustomed to range, and where plaintiff's cattle, to defendant's knowledge, were accustomed, and had the right, to be. (2) That, while a train of defendant's cars, at the end of which were several tank cars filled with cottonseed oil, was being moved over the switch track, several tank cars broke loose from the train and ran back along the switch to the end thereof, where they struck a bumper, the contact breaking two of the tank cars and allowing the oil (10,000 gallons) to escape. The oil ran across defendant's land and upon the land of others, and filled up water holes and low places for several hundred yards in the direction of its flow. (3) The oil so remained in the water holes and low places for four days, defendant being without knowledge thereof, having taken no steps, after the escape of the oil, to ascertain what became of it, and made no effort to remove it. (4) The plaintiff, not knowing of the escape of the oil, did not restrain his cattle, and two of his cows, worth $80, drank oil and died.

*Mc Willie & Thompson*, for appellant.

It will be observed that the case is not within § 1808, code of 1892, and proof of injury does not make out a *prima facie* case. The injury complained of was not inflicted by the running of the locomotives or cars of the railway company.

There is no pretense that the defendant's track was improperly constructed, or that any of its machinery, appliances, couplers, etc., were defective, or that the train was being improperly or negligently operated. The only fact stated, pertinent to this view of the case, is the bald one that several cars broke loose from the train. The appellee's case not being aided by the statute above cited, we must assume that the cars broke loose by a pure accident, without defendant's fault.

Appellant is not liable to appellee, for two distinct reasons: First, the railway company is not shown to have been negligent in allowing the oil to escape; and, second, the injuries

complained of are too remote to justify a recovery, even if the railway company be regarded as negligent.

Up to the breaking of the tank cars and the escape of the oil, surely the defendant had done or omitted nothing which made it liable. What was it under legal obligation to do thereafter? It is not shown that the defendant, or any of its employes, knew or ever heard that cows would drink oil or that it would kill them if they drank it. It is not shown that the defendant or any of its employes knew there were water holes and low places in the lands adjoining defendant's premises which would receive and retain the oil. Without evidence of such knowledge, or reason to apprehend danger to cattle, the appellant was not guilty of negligence in failing to follow the oil and remove it from the low places and water holes.

The drinking of the oil was the only proximate cause of the death of the cows. The accumulation of the oil, in water holes and low places was itself a remote cause. The escape of the oil was one link further back in the chain of causation, the bursting of the tanks another link further back, and the breaking loose of the cars yet another link further away. *Illinois, etc., R. R.* v. *Woolley,* 77 Miss., 927. Where oil, after escaping from railroad cars, became ignited, and flowing down a stream, set fire to a building three or four hundred feet away, it was held that the owner of the building could not recover of the railroad company, because his damage was too remote. *Hoag* v. *Lake Shore, etc., R. R. Co.,* 85 Pa. St., 293, s. c. 27 Am. Rep., 653. The court, in the case just cited, treated the negligence of the railroad company causing the wreck of its cars, from which the oil escaped, as being established, and said, "It would be unreasonable to hold that the engineer of the train could have anticipated the burning of the plaintiff's property as a consequence likely to flow from his negligence in not looking out and seeing the landslide," the obstruction which derailed the cars. "The obstruction itself was unexpected. . . . The probable consequences of the collision, such as

the engineer would have a right to expect, would be the throwing of the engine and a portion of the train off the track. Was he to anticipate the bursting of the oil tanks, the oil taking fire, the burning oil running into and being carried down the stream, and the sudden rising of the waters of the stream, by means of which, in part at least, the burning oil set fire to plaintiff's building?" So in the present case we say it would be unreasonable to hold that the employes in charge of appellant's train could have anticipated the death of appellee's cows as a consequence likely to flow from the breaking loose of the cars of oil. The breaking loose of the cars was unexpected, and, as we have stated, must be assumed to have been purely accidental. Were they to anticipate the bursting of the oil tanks, the running down of the oil, its accumulation in low places and water holes, the drinking of the oil by the cows, and their death in consequence?

If this were a suit by the owner of the land for damage done to the soil by the oil, the railway company would not be liable, because not negligent in and about the escape; such damage to the soil would be the result of accident.

The escape of water from reservoirs, causing damage, has frequently been considered by the courts. The English doctrine, not recognized in America, is announced in *Fletcher* v. *Rylands*, L. R., 1 Exc., 265, s.c. L. R., 3 H. L. Cas., 330. This decision has not been approved nor adopted in America. It has been largely modified in England, and the case practically overruled, as shown by Cooley on Torts, 570, 571, 572.

Cooley says (work on Torts, p. 570), speaking of the law of escaping waters, "American decisions seem to plant the liability on the ground of negligence, and the party constructing or maintaining the reservoir is held liable, not at all events, but as he might be if he had negligently constructed a house which fell down, or invited another into a dangerous place without warning." I have a right to maintain an overground cistern on my premises, near the line of my neighbor's lot. If some

mischievous person bore a hole on the side of the tank, so that the water shoots out and into the window of my neighbor's house, and wets his carpet, am I liable for the injury inflicted, being myself free from negligence? Most certainly not.

If, under the facts of this case, damage to the soil be the result of an accident, how can steps further down the concatenation of causes, the unanticipated drinking of the oil by the cows and the unexpected killing of the cattle, stand upon a higher plane?

*Voller & Mounger*, for appellee.

The appellee in this case was in no way at fault, and was injured by the negligence of the appellant in handling the oil and allowing it to escape into the pasture. The accident to the car tanks occurred by the running of the locomotive and cars of the appellant, and the statute makes this *prima facie* evidence of the railway company's negligence. Code, § 1808. The statute is very broad, and covers any sort of negligence, such as escape of sparks, cinders, etc. *Mobile, etc., R. R. Co.* v. *Gray*, 62 Miss., 383; *Louisville, etc., Ry. Co.* v. *Natchez, etc., R. R. Co.*, 67 Miss, 399.

Negligence will be presumed in this case. If the accident does not ordinarily happen, then it is reasonable grounds to presume want of care. 2 Thompson on Negligence, 1230.

Negligence of a railroad, in case where a door fell from a moving freight train upon a pedestrian, was presumed, under the Arkansas statute providing that railroads shall be "responsible for all damage to person or property done or caused by the running of trains." *St. Louis, etc., R. R. Co.* v. *Neely,* 63 Ark., 636; s.c. 37 L. R. A. 616, s.c. 40 S. W., 130.

An overflow of water in a loft, of which defendant was in the exclusive possession, is sufficient *prima facie* to fix liability against him for damage caused to the property below, in absence of some explanation negativing want of care upon his part. *Greco* v. *Bernheimer*, 40 N. Y. Supp., 677.

The escape of water from an upper to a lower floor of a building raises an inference of negligence against one in the exclusive control and occupancy of the upper floor.   *Martin* v. *Coleman*, 70 N. Y., 714, s.c. 35 N. Y. Supp., 1069.

The rule, as stated by Cooley on Torts, is as follows: "It is lawful to gather water on one's premises for useful and ornamental purposes, subject to the obligation to construct reservoirs with sufficient strength to retain the water under all contingencies which can reasonably be anticipated, and afterwards to preserve and guard it with due care." The same rule applies to any other liquid.   The contingencies of the tank cars striking together, or striking on the bumpers, should have reasonably been anticipated, and due care should have been taken that this accident should not happen.

One who collects upon his own premises substances liable to escape and cause mischief, must use reasonable care to retain it, and is answerable for the damage sustained by persons or property rightfully on adjoining property from its escape for want of care.   *Defiance Water Co.* v. *Olinger*, 32 L. R. A., 736.

The flooding of appellee's pasture, and the polluting of the spring and water holes therein, was a natural and necessary consequence of appellant's negligence in allowing the accident to happen and the oil to escape.   Appellee's cattle were accustomed to drink at these places and to graze upon this pasture. The railway took absolutely no precaution to guard against the evil effects of the accident, if any evil effects should arise, but went their way without taking any steps to prevent any damage that might arise, or to prevent an overflow of the oil, or to drain off the oil, or to remove the cars, or to drive the cattle away from the oil, or to prevent their access to it.

Appellant is presumed to have known that oil was injurious to cattle.   It is a matter of common knowledge that oil taken internally is a purge, and every one knows that cottonseed and cottonseed products are pleasing to the taste of cattle, and liable to be licked up by them if left exposed.   Moreover, the

water supply being polluted and the grass being wet by the oil, the cattle were compelled to take it in large quantities in seeking to drink water and in eating grass. It is also a matter of common knowledge that oil taken internally produces purging, and, when taken in quantities, death.

Knowing that the lands were used as a pasture, it was the duty of the railway company to know that the oil was not injurious to cattle before leaving it exposed to them. That it was injurious is shown by the fact that it killed the cattle.

In addition to the cases above cited, we submit that the following authorities sustain the decision of the court below in this case: *Kennard* v. *Standard Oil Co.* (Ky.), 7 L. R. A., 451; *Collins* v. *Charter Gas Co.* (Pa.), 6 L. R. A., 280, and notes; *Eufaula* v. *Simmons*, 86 Ala., 515.

Argued orally by *R. H. Thompson*, for appellant.

CALHOON, J., delivered the opinion of the court.

We cannot hold that the damage in this case can be referred to the act of the railway company as the proximate cause. *Meyer* v. *King*, 72 Miss., 1; *Robinson* v. *Gage*, 27 So. Rep., 998; *Illinois, etc., R. R. Co.* v. *Woolley*, 77 Miss., 927.

*Reversed.*