CHARLES M. BUSSEY ET AL. *v.* GULF & SHIP ISLAND RAILROAD COMPANY.

1. RAILROADS. *Death by wrongful act. Fellow-servants. Negligence of company. Parties plaintiff. Chapters 65, 66, Laws 1898.*

Laws 1898, ch. 66, being a legislative enactment under constitution 1890, sec. 193, creating a right of action by an employe for injuries arising from the negligence of fellow-servants and limiting the right to sue when such injuries result in death to the personal representatives of the deceased, has no application to other classes of injuries than those named, as when the negligence is that of the master, and hence relates to a different subject and does not impliedly repeal laws 1898, ch. 65, re-enacting Lord Campbell's act and permitting actions for any class of injuries causing death by certain relatives of the deceased.

2. SAME. *Employes. Laws 1898, ch. 65.*

By the express terms of ch. 65, acts 1898, it is made to apply to all personal injuries of servants or employes resulting in death which are due to the negligence of the master.

Calhoon, J., dissenting, expressed the view that sec. 193, constitution 1890, regulated the rights of railway employes, and that for injuries resulting in the death of an employe the right of action was in his executor or administrator under the designation of "legal or personal representative," and that the legislature in exercising the authority given by said section to extend the remedies therein provided to other classes of employes could not confer upon relatives the right of action in such cases.

FROM the circuit court of, first district, Hinds county.
HON. ROBERT POWELL, Judge.

This was an action brought by the father, mother, brother and sister of Thomas B. Bussey, a brakeman, who, while in the service of the appellee, was, as averred in the declaration, thrown from a train and killed in consequence of a derailment resulting from a loose and sunken joint in the rails of appellee's track, the damages claimed being such as the jury might

award, taking into consideration all damages of whatever kind to the decedent.

The defendant (appellee here) demurred to the declaration, and raised the point that as the decedent was an employee of a corporation, the right and remedy were regulated by ch. 66, laws 1898, which did not authorize suit by a brother or sister, and only authorized suit by a parent for the death of a child, the decedent being an adult. The demurrer was sustained, and the plaintiff not asking, to amend, judgment was rendered for the defendant, whereupon this appeal was prosecuted to the supreme court by the plaintiffs.

*Alexander & Alexander,* for appellant.

The apparent conflict between ch. 65 and ch. 66, laws 1898, all disappears if we consider each in the light of its history and purposes. Prior to the constitution of 1890, actions for injuries causing death were governed by what is known as the "Lord Campbell Act," adopted into our statutes and modified in several respects. It appeared as sec. 1510, acts 1880. It did not seek to define what wrongful or negligent acts would give rise to an action. It left the question of defendant's liability to be determined by the general law regulating the relation of master and servant. It did not in any way qualify the fellow servant rule. It took the law as to negligence as it found it, and merely dealt with the question as to who should bring the suit and the measure of damages. These matters were then wholly within the legislative power to regulate, and nothing in the constitution of 1890 abridges this power. In cases where, under the general law, liability for negligence arose, the legislature could then as well as now regulate the remedy and the measure of damages. It had full power to abolish or modify the fellow servant rule. The fact that the constitution instead of mere legislative enactment worked this modification, was not because the constitution makers had any more power to do it or the legislature any less power, but merely

because successive legislatures had voted against the modification. The constitution, as was said in *White* v. *Railway Co.,* enlarged the rights of plaintiffs, and added new grounds of liability for negligence. (72 Miss., 16.) As to these new grounds, the right which is created, it assumed to give the remedy. It provided for the first time in our jurisprudence that in certain cases of injury by fellow servants, the employer should be liable, and gave this new right of recovery to the legal or personal representative. Section 193 did not take away any right existing under the general law, or any remedy existing under the "Lord Campbell Act." To show that the constitutional scheme made for the new causes of action could exist and consist with the existing general and statutory law, § 1510 of the code of 1880 is brought forward into the code of 1892, and the constitutional and statutory schemes are both preserved intact and without a thought of conflict. Nothing in the constitution limited the right of the legislature to deal with the whole question of liability for negligence, and who may recover. The only restriction comes from the fact that the legislature cannot take away the right conferred by sec. 193. It can add to that right; indeed, sec. 193 seems to contemplate that the legislature may regulate the remedies. It does not provide that only the legal representatives may assert the right created by the constitution, but only that the legal or personal representatives "shall have the same right and remedies as are allowed by law to such representatives of other persons." In the Hunter case, the legislature had not further dealt with the question, but it was held that only the administrator could sue where the right was one created by the constitution. We then have a case where there is a statute, and a constitutional provision, independent and not in conflict, with a perfect right to legislate as to both, as to the remedy and measure of damages.

Section 663, code 1892, provided that actions for death, where, under the general law, there was liability, should be in the name of certain designated relatives, and that the dam-

ages should only be such as resulted to the person suing. This statute was amended by the act of 1896, and was brought forward as ch. 65 of the laws of 1898. It contained two or three important amendments; one to meet the decision in the Prendergast case, which denied damages where death was instantaneous; and the other to enlarge the damages, so that instead of recovering only such damages as resulted to the party suing, the damages recovered, however the suit might be brought, should be "all damages of whatever kind to any and all parties interested in the suit."

The third change was to meet and remedy the law that two actions might coexist, one to the relative and one to the administrator, and to limit suits by the executor to cases where there should be no near relative. Section 2 of this act expressly provides that it shall apply in favor of employees, and to all personal injuries received by employees where death ensues. This provision is and was constitutional, viewed as a part of the "Lord Campbell Act," and applied to cases arising under the general law; only when it might be sought to apply it to injuries caused by fellow servants would the question arise as to whether it would be controlled by sec. 193 of the constitution. In other words, ch. 65 is made to have as wide an operation in favor of employees as it can have in view of the constitution.

Chapter 66 is the bringing forward of sec. 193 of the constitution enlarged as to the remedy. It meets the difficult point had in the Hunter case—that is, that on the face of sec. 193, without additional legislation, only the personal representatives could sue. It extends the remedy to certain relatives designated. It did not provide expressly that the relatives suing should recover all damages of every kind to the person suing and to the decedent, but limited it to damages to the person suing. This was, perhaps, under the mistaken notion that something in the constitution limited the power to extend the remedy, and directs who should be entitled to the damages, or else it was thought that the provision that "the legal representatives

shall have the same rights and remedies as are allowed to representatives of other persons" would make the remedy and measure of damages as broad as that conferred by ch. 65. However that may be, ch. 66, which deals solely with the new liabilities added and created by the constitution, limits recovery by a relative to the damage that relative sustained. But it does not deal with or in any way affect the large class of cases resting on the general law of negligence, unaffected by the constitution, and which, as to liability, is governed by the general law, and, as to the remedy and measure of damages, is governed by ch. 65. This, however, harmonizes both statutes, relieves them of any apparent conflict, and gives to each its beneficent office, the one regulating cases arising under the general law, which form the rule, and the other dealing with cases created alone by the constitution, which form the exception.

This case, like the White case and the Wooley case, rests on the common law duty to furnish employees safe machinery and appliances. The Wooley case arose before the act of 1896, and as Wooley was an employee, and sec. 193 of the constitution had not been enlarged as to the remedy, the wife based her right on § 663, code 1892, and the court assumed throughout that she had this right. It was never suggested that her right, which rested on § 663, did not exist because her husband was an employee. If the view held by the court below here is correct, she would have had no right of action at all, for there is as much apparent conflict between sec. 193 of the constitution and § 663 of the code as there is between the two acts of 1898. In the Wooley case, the court holds, first, that the railroad company is liable in not providing a safe railway; and, secondly, that under § 663 the widow could maintain the action. Now, ch. 65, laws of 1898, extends this right to sue to all relatives, gives only one suit, and includes the damages of all kinds to the relatives as well as to the decedent himself. It is not suggested that the legislature did not have the right to thus enlarge § 663. If it did not have this latter right, then the

provisions of ch. 66, as to who may sue for the death of an employee, are void, and cannot repeal ch. 65. If it did have this right, then it must be assumed to be dealing only with cases created by the constitution, which is incorporated *in totidem verbis* in the act. To hold that these statutes were in conflict would be not only to overlook their scope and purposes, but convict two legislatures of folly in enacting almost *in uno flatu* statutes mutually destructive of each other. We insist that the action is properly brought here, and that we have a right to recover the damages resulting to the decedent himself in the loss of his life; in other words, damages to the decedent unlimited by any rule as to the instantaneous death.

The court below held that the latter act alone applies to employees of corporations. This proceeds on the idea that ch. 66, acts of 1898, repealed ch. 65 as to employees of corporations. Surely it cannot be that where the constitution enlarged their rights, and the acts of 1896 did the same, that when both statutes are brought forward side by side in acts of 1898, that because ch. 66 was passed four days later than ch. 65, it repealed it by enacting the very reforms the legislature was intending to accomplish. The court seemed to ignore entirely the plain provisions of sec. 2 of ch. 65.

The declaration does not charge instantaneous death, but death after "a few moments." But even if death were instantaneous, ch. 65, act of 1898, gives the relatives the right to recover such damages as the jury may award, "taking into consideration all damages of every kind to the decedent, etc."

What effect can be given to the provision as to instantaneous death not affecting the right, unless it was meant to make the question wholly immaterial? Instant death never did affect the right of the relatives to recover loss sustained by them. The provision was not needed for them. It could only have been intended for the benefit of his estate. The personal representative, under the law as it stood, could not sue for instan-

taneous death, because the intestate had no right in his lifetime. There was formerly a liability, but no one to sue. Now the legal representative can (in cases where there are no relatives) sue even if death were instantaneous, and recover for the estate. If there are relatives, they bring the action and recover the damages to the estate of the decedent. As the damages are assets exempt from creditors, there is no need for an executor.

*E. J. Bowers* and *McWillie & Thompson,* for appellee.

Two questions, and only two, are presented.

First. Is ch. 66, laws of 1898, the last legislative utterance, the exclusive law of this state, relating to suits for wrongful death of an employee of a railroad corporation? We maintain the affirmative.

Second. Under ch. 66, laws of 1898, can a brother or sister sue at all, and can the father or mother of an adult, upon whom neither of them are dependent, sue for his death? We assert the negative.

That the terms of ch. 65, laws of 1898, are broad enough to cover this case will not be denied, had it remained unaffected by the subsequent act. Chapter 65 was a general law and applied to all cases in which actions could be maintained for the death of a person; it embraced actions for the death of employees of natural persons and corporations. Of its provisions the following is a just analysis:

First. Under its provisions the following relatives could sue for the death:

(*a*) The widow for the death of the husband; (*b*) the husband for death of the wife; (*c*) the parent for death of a child; (*d*) the child for death of a parent; (*e*) the brother for death of a sister; (*f*) the sister for death of a brother; (*g*) the sister for death of a sister; (*h*) the brother for death of a brother. And the statute, ch. 65, authorized all of the parties interested, that is to whom the cause of action is given, to join in one suit.

Second. Under said act, ch. 65, it made no difference that the death of the decedent was instantaneous.

Third. The measure of damages under ch. 65 were "such damages of every kind to the decedent, and all damages of every kind to any and all parties interested in the suit."

Fourth. If the decedent left none of the aforesaid relatives, then and then only could his executor or administrator sue.

But the legislature, in its wisdom, was not content to allow the statute to remain long in force. Only four days afterwards it passed ch. 66, laws of 1898, excepting from the general law cases for the death of an employee of corporations.

By this statute an action is given:

(*a*) To a widow for the death of her husband; (*b*) to a husband for the death of his wife; (*c*) to a parent for the death of a child; (*d*) to a child for the death of an only parent.

All of these were given by ch. 65, except that a child could sue for the death of a parent under ch. 65, whether such parent be the only one or not.

It cannot be said that the legislature meant to re-enact ch. 65 so far as concerned classes (*a*), (*b*) and (*c*) without accomplishing anything else as to them. The re-enactment as to them is in *ipsisimis verbis,* and perfectly useless unless the balance of ch. 66 in some way enlarged, or restrained the action. Now in regard to class (*d*), the word "only" is used before the word "parent," for whose death a child can sue. Is this word to be given any force and meaning at all? What force can you give it unless you hold that the parent, for whose death suit is brought, must be an only parent in case decedent was an employee of a corporation? None whatever. If you decide that a child, who has one parent living, can sue for the death of another parent, who was an employee of a corporation, you simply strike out the word "only" from ch. 66, the last legislative utterance on the subject.

But what will you say of classes (*e*), (*f*), (*g*) and (*h*), under ch. 65, Was the legislature simply undertaking to re-enact

the old law? Certainly not, for the omission of the classes just named negative that idea. Was not the legislature, in adopting ch. 66, undertaking to deal with rights of action for the wrongful killing of a class of persons, employees of corporations, and dealing with the subject, did it not enumerate the relatives to whom the right should be given; and can you say that it did not enumerate all to whom the right was intended to go, or with whom it was intended to be left?

There is no provision in ch. 66 for the joining of all parties in interest in one suit. Does not this omission show that the legislature did not intend for the provision for a joint suit, contained in ch. 65, to be applicable in a suit for the death of an employee of a corporation? It certainly demonstrates that the legislature was not, in the adoption of ch. 66, simply re-enacting existing law.

*Instantaneous death.* The latter act, ch. 66, makes no mention of the matter of instantaneous death. Chapter 65 does.

*Damages.* The damages that can be recovered under ch. 66 are much more limited than they are in ch. 65. By the latter act the plaintiffs can recover only "such damages as may be suffered by them respectively by reason of such death." Can it be possible that a brother can recover a broader scope of damages for the wrongful death of a brother than his widow could recover, had he been married, for the death of the same person? Impossible that the legislature should have so intended, and yet there is no escape from the conclusion that such is the case unless ch. 66 be held to be the exclusive law on the subject of suits for death when the decedent is the employee of a corporation.

Again, if ch. 66 was not intended to be exclusive as to a class of persons, the employees of corporations, why does it expressly provide that the legal or personal representative of the decedent may sue as provided by law before its passage? This was intended for no purpose except to make that part of ch. 65, which gives a right to the administrator or executor, in cer-

tain states of case, applicable to the class being dealt with, employees of corporations, and shows that in legislative contemplation no part of ch. 65 would be applicable, unless it was expressly made so.

"When the purpose of a prior law is continued, its words usually are, and an omission of the words imply an omission of the purpose." *Price* v. *Chicago, etc., Co.,* 182 U. S., 438.

The right to sue for the death of another is purely a legislative grant; any sort of limitations can be placed thereon by the giver. Our constitution, sec. 193, secures the right only to executors and administrators. The only question arising thereon is whether the legislature could extend the provision. The last clause of the section does not empower it to do so; it only authorizes the extending of constitutional remedies to others.

Of course, if ch. 66, laws of 1898, has exclusive application to cases for the death of an employee of a corporation, the brother and sister of decedent cannot recover, because they are not within the terms of the law; no action is given to them.

Nor can the father or mother of decedent, he being an adult, recover for two reasons:

(*a*) An adult is not a child.

(*b*) Parents are not entitled to the earnings of an adult son; and in this case, there being no averment in the declaration that either the father or mother was dependent upon the son, they have not suffered damages. Under ch. 66, *supra,* plaintiffs can only recover "such damages as may be suffered by them, respectively, by reason of such death." This, of course, means legal damages.

Argued orally by *C. H. Alexander,* for appellant, and by *R. H. Thompson,* for appellee.

WHITFIELD, C. J., delivered the opinion of the court.

The only true way to understand chs. 65 and 66 of the laws of 1891 is to do as ought always to be done in getting at the

meaning of statutes; that is to say, to look at them in the light
of their history and purposes.   The action here is to recover for
the negligence of the company, not that of a fellow servant.
Appellants claim the right to bring the action under ch. 65.
The court below held that, as the deceased was an employee, the
suit could only be brought under ch. 66.   It also held that
ch. 66 repealed ch. 65 as to all actions by employees, and that
under ch· 66 appellants had no case.   It is perfectly manifest
that there was no express repeal.   Repeals by implication are
never favored.

Let us see, now, what the history and purposes of these two
acts are.   Prior to the constitution of 1890, actions for injuries
causing death were governed by Lord Campbell's act, which for
the first time appeared in our law as art. 48, p. 486, code
1857, from which is taken literally, leaving out the clause as to
the recovery for the death of a slave, (§676, code 1871), §1510
of the revised code of 1880.   This act did not define the negli-
gence which would give rise to the action.   It left the liability
of defendant to be determined by the general law regarding the
relation of master and servant.   It did not in the remotest de-
gree touch or qualify the stringent fellow servant rule, illus-
trated   in   all   its   bald   absurdity   by   the   case   of *Mc-
Master*   v.   *Railroad   Co.*,   65   Miss.,   264   (4   So.   Rep.,
59;   7   Am.   St.   Rep.,   653).   It   left   the   law   as   to
negligence where it found it, and dealt merely with who should
bring the suit, and the measure of damages.   Who should sue,
and what the measure of damages should be, were fully within
legislative control.   The constitution did not interfere with this
power.   The harshness of the fellow servant rule had become
intolerable.   It shocked common sense and common justice, and
received its apotheosis in McMaster's case.   The legislature had
been appealed to in vain at successive sessions to modify this
rule.   It had the power to do it.   But it declined to exercise it.
It was left for the framers of the constitution of 1890 to accom-
plish this greatly-needed change;   and sec. 193 of the consti-

tution, which created for the first time in this state new—wholly new—rights and causes of action, never existing before, effected this change. It is indispensable to understand that sec. 193 did create the rights and causes of action it provided for. We expressly so held in White's case, 72 Miss., 16 (16 So. Rep., 248). It provided that as to employees injured by the negligence of fellow servants, of the class described in sec. 193, there should exist thereafter, as there had never done before, these causes of action. It enlarged the rights of those authorized to sue by adding new grounds of liability, theretofore unknown to our law. That conception is fundamental to any proper understanding of the scope and purposes of these two acts. This section took away no right existing under the general law, nor any remedy provided by § 1510, revised code of 1880. It was never dreamed of that there was any conflict between § 1510, revised code of 1880, and sec. 193, Const. 1890. On the contrary, § 1510 of the revised code of 1880 was brought forward as § 663 of the code of 1892; and both this statute, with its scope, and sec. 193, with its scope, stood side by side for years without the thought ever entering anybody's mind that there was conflict between them. Why? Because they related to wholy different rights. Section 1510 and sec. 663 related to cases arising under the general law as it existed before the constitution of 1890. Section 193 of that instrument related exclusively to the new rights by it created—of recovery where the negligence was that of certain named fellow servants. But § 1510 of the revised code of 1880 is brought forward as § 663 of the code of 1892, and as ch. 86 of the laws of 1896, and as ch. 65 of the laws of 1898. In purpose they are all one. All relate to causes of action antedating the constitution, of liability under the general law of negligence, and in no way whatever to causes of action for injuries inflicted by certain fellow servants, first created by constitution, sec. 193. Now, sec. 193 of the constitution is also developed and brought forward as ch. 87 of the laws of 1896 and ch. 66 of the laws of 1898. It

relates exclusively to actions brought by employees to recover for injuries due to the negligence of those fellow servants named in sec. 193 of the constitution. It repeats sec. 193, *ipsisimis verbis.* It has no relation whatever to rights of action under the general law of negligence, antedating the constitution of 1890. Here is a statutory scheme, under said art. 47, p. 486, code 1857, § 676, code 1871, and § 1510 of the revised code of 1880 (our form of Lord Campbell's act), developed in § 663 of the code of 1892, and ch. 86 of the laws of 1896, and ch. 65 of the laws of 1898, wherein rights of action arising under the general law of negligence are provided for, and have been continuously maintained and improved—a complete and perfect scheme relating wholly to causes of action antedating the constitution of 1890, and having nothing on earth to do with rights of action arising from the negligence of fellow servants. That is one scheme unrelated to, unaffected by, sec. 193 of the constitution. Here is another scheme, never existing before the constitution, created by sec. 193 of that instrument, relating not at all to causes of action provided for by the statutory scheme above, but exclusively to causes of action created by sec. 193, conferring the right to recover for injuries inflicted by the named fellow servants. They have stood side by side, never questioned, as both proper and not in conflict, before. It is perfectly manifest that if ch. 66 of the laws of 1898 is in conflict with ch. 65 of the laws of 1898, then sec. 193 of the constitution, which is ch. 66, was also in conflict with § 663 of the code of 1892, and also that ch. 87 of the laws of 1896 was in conflict with ch. 86 of said laws. There is no conflict whatever between the two acts (ch. 65 and ch. 66), in their essential frame.

It is said that ch. 65 has no relation to suits by employees at all—not even where the employee sues on the ground of negligence of the master alone; and the court below so held, notwithstanding sec. 2 of said ch. 65 plainly says: "This act shall apply to all personal injuries of servants or employees

received in the service or business of the master, where such injuries result in death." This section cannot thus be read as blank paper. It expressly applies the principle of Lord Campbell's act—recovery for injuries resulting in death—to all employees, when the injuries were due to the negligence of the master. It was part of a statutory scheme that had never assumed to deal with injuries caused by the negligence of fellow servants in any way whatever, and it was not dealing with them.

It is said the measure of damages is different in the two acts, and there is difference as to who may sue. Certainly. Do they not relate, as shown, to wholly different subject-matters? The measure of damages and the parties to sue might well be different—might be just what the legislature chose to make them. There is no conflict possible to be seen because of the different measures of damages, except where the two wholly different acts, with wholly different histories and purposes, are confused and blended, instead of being kept separate and distinct.

It is also to be specially noted that while sec. 193 left the remedies, measure of damages, and procedure under § 663 of the code of 1892 unaffected, it also clearly intended the legislature to provide and regulate remedies for rights provided by itself. It is true, it provided that "legal or personal representatives" might assert the rights thereby provided, and that in the Hunter case, 70 Miss., 471 (12 So. Rep., 482), which nullified the words "or legal representatives" in sec. 193, it was held the personal representative must sue, till legislation extended the remedy. The Hunter case did not attempt to hold the legislature was not authorized to extend the remedy provided by sec. 193. That section expressly says, "The legal or personal representatives shall have the same rights and remedies as are allowed by law to such representatives of other persons." It was perfectly competent for the legislature to provide additional remedies, and it did do so in the acts we are considering, for the express purpose of abrogating the rule announced in the Hunter case; and it also by the same legislation abrogated the rule an-

nounced in the Pendergrass case, 69 Miss., 425 (12 So., Rep., 954). The purpose of the legislature was plain. It was to observe the mandate of this most wholesome provision of the constitution, and so make effective the remedies for the new rights by it created, and also to broaden and develop the remedies for the rights provided for by § 676, code 1871, and § 1510 of the revised code of 1880—the initial form in which the code of 1857 and that statute left them—to the present completeness furnished by ch. 65, laws of 1898.

The construction adopted by the court below would, if followed here, overrule the Wooley case, 77 Miss., 927; 28 So. Rep., 26. We expressly held there that the widow could sue under § 663, code of 1892, and Wooley was an employee, and the remedies for rights provided by sec. 193 had not been enlarged by legislation. If the view we combat is correct, Mrs. Wooley would have had no right of action. Chapter 65, laws of 1898, extends the remedy to all relatives named, giving only one suit, including damages of all kinds, as well to the relations as the decedent. It was perfectly competent for the legislature to do this. Another thing: If, as is suggested, the legislature did not have the power, under sec. 193, to extend the remedies as to who could sue for the assertion of the rights therein provided for, then, manifestly, the provisions of ch. 66, as to who may sue, are simply void, and ch. 65 is left unaffected in that regard —not repealed. How could an unconstitutional provision in ch. 66 repeal a constitutional provision in ch. 65 ? The proposition is wholly untenable. But it is said ch. 66 was passed four days later than ch. 65, and is the last expression of the legislative will. Granted. But about a different subject-matter.

It is a thoroughly settled canon of construction that the courts must never, if it can properly be avoided, so construe acts of the legislature as to impute folly to that body. To hold that ch. 66 repeals ch. 65 as to employees is not only to abrogate sec. 2 of ch. 65, but to charge the legislature with the absurdity of enacting two statutes, standing side by side, both in the acts of 1896 and of 1898, when one destroys the other.

This we must decline to do. The conflict all vanishes in the light of the history and purposes of the two acts, and they are perfectly harmonized by our construction. There are minor differences, it may be conceded, which were well calculated to mislead the accomplished trial judge. But he should not have sacrificed the wide scope and large substantial rights worked out on different lines to mere trivial inharmonies, correctible by legislative amendment.

*Reversed and remanded.*

CALHOON, J., dissenting.

Section 193, Constitution, is as follows (note that it refers to employees exclusively, and to no other class): "SEC. 193. Every employee of any railroad corporation shall have the same right and remedies for any injury suffered by him from the act or omission of said corporation or its employees, as are allowed by law to other persons not employees, where the injury results from the negligence of a superior agent or officer, or of a person having the right to control or direct the services of the party injured, and also when the injury results from the negligence of a fellow servant engaged in another department of labor from that of the party injured, or of a fellow servant on another train of cars, or one engaged about a different piece of work. Knowledge by an employee injured of the defective or unsafe character or condition of any machinery, ways or appliances shall be no defense to an action for injury caused thereby, except as to conductors or engineers in charge of dangerous or unsafe cars, or engines, voluntarily operated by them. Where death ensues from any injury to employees, the legal or personal representatives of the person injured shall have the same rights and remedies as are allowed by law to such representatives of other persons. Any contract or agreement, express or implied, made by an employee to waive the benefit of this section shall be null and void; and this section shall not be construed to deprive any employee of a corporation, or his legal or personal representative, of any right or remedy that he now has

by the law of the land. The legislature may extend the remedies herein provided for to any other class of employees."

Of course, it must be conclusively presumed that the constitutional convention, when it ordained this section, acted in full view of the common law and of Lord Campbell's act, and of the fellow servant rule prevailing in the decisions of the courts. It is also plain that this section can no more be added to nor subtracted from by legislatures than any other clause of the constitution. It should absolutely bind the lawmaking power, so that it cannot move beyond the limits of its own authorization. The section refers alone to employees. Before Lord Campbell's act, which was the beginning and prototype of all legislation on the subject, there could be no recovery for a personal injury after the death of the person injured. The right of action did not survive. It died with the person. "*Actio personalis moritur cum persona.*" Section 663, Code 1892, the outgrowth of prior legislation on the subject, creates and bounds the right of recovery in the state of case it mentions only, and in no other state of case. It applies in terms to "any persons" (all persons), and against all persons and all corporations. Section 193 of the constitution, referring solely to employees, regulates, prescribes and measures the rights of all em ployees of any railroad "for any injury from the act or omission of said corporation or its employees where the injury results from the negligence of a superior agent or officer, or of a person (however inferior) having the right to control or direct the services of the party injured, and also," etc. A superior agent or officer represents the corporation, which can act only through its officers and agents, and the expression used is the equivalent of saying: "Where the injury results from the negligence of the corporation, or of a person having the right to control or direct the services of the party injured." So far as the meaning is concerned, it was useless to employ the words "superior agent or officer," as indicating one having the right to "control or direct the services of the party," because that is immediately

and specifically provided for.   Therefore, it is clear that it was meant that a "superior agent or officer" is a representative of the corporation, standing for it.   This not only changes the fellow servant doctrine as previously established, but secures the right of employees beyond this, against the corporation represented by its "superior agent or officer."   The several separate provisions are plainly expressed.   The right of action. is given to "the legal or personal representatives," which terms, in the whole history of the law as applied to actions, mean administrators and executors.   Heirs, as such, could never sue in such cases; and neither Lord Campbell's act, nor any of the acts following it or enlarging it, ever had any reference to the laws of inheritance.   The constitutional provision applies to injuries not causing death as well as to those causing death, while § 663, code 1892, and § 1510, revised code 1880, relate alone to cases where death ensues.   The constitution creates new rights in favor of employees of railroad corporations, enforceable by them while living, and by their legal or personal representatives after death.   These rights were deemed of such importance as to be made the subject of the special provision contained in sec. 193, and the legislature was authorized to extend the remedies therein provided for to any other class of employees.   This section of the constitution was put in the code of 1892 as § 3559 of that code, and, being thus treated as a mere statute, the idea was begotten that it might be amended by the legislature otherwise than by simply extending the remedies, as alone it was authorized to do.   In the act of 1896 the legislature extended the remedies to the employees of all corporations, as it was fully empowered to do.   Therefore, sec. 193 must now be considered as if employees of all corporations were embraced by it, and by it all secured the very valuable rights it confers. The legislature was powerless to amend the section except as expressly authorized; else why the limit on the authorization to an extension of the remedies "to any other class of employees?"   The legislature had no power to say who might

sue and recover, except as specified in the section. This section is as sacred and free from legislative touch as any other. If it may be altered, so may be every other section, and the constitution may become the plaything of the legislatures and the courts. When a subject is regulated by the fundamental law, legislatures must keep hands off, except as by it empowered to touch it. The constitution having dealt with the subject, it is taken out of the domain of legislative action, and the constitution alone is the boundary of the rights and remedies it prescribes. Employees only, being provided for by the constitution, must look not to legislative action, but to the paramount law, while all others must be governed by the statutes. If the constitutional provision in any respect narrowed the rights and remedies of employees as existing by statute before, it also greatly enlarged them, and the section must be regarded as the expression of the sovereign will as to the class provided for. If it had simply narrowed, it would not be contended that the legislature could enlarge, and so it cannot enlarge it beyond the prescribed limits of enlargement, any more than it can restrict or narrow those limits. It is therefore a conclusion inescapable that employees of all corporations must look to the constitution for the measure of their rights and remedies, and that others depend on the statute. The word "corporation," in § 663, code 1892, is used as a defendant in an action for injury producing death, so as to secure liability of corporations in such cases, as well as natural persons. Chapters 65 and 66, laws of 1898, are independent acts, varying as to the parties authorized to sue, and varying as to the measure of damages; the former being code, § 663, with an addition, and the latter being sec. 193 of the constitution extended, and certain unauthorized interpolations as to who may sue, and also by inserting "or of the improper loading of cars." The only effective provision in ch. 66 is the extension to employees of all corporations. Suppose § 663 of the code and sec. 193 of the constitution were embraced in one act; could ony one question that the part compos-

ing § 663 was for persons other than employees of corporations, and sec. 193 for such employees? The same interpretation must now apply. Section 193, extended, very manifestly is the exclusive authority for, and measure of, the rights and remedies of employees of corporations, as § 663 is for other persons.

To recur: At common law all persons had a right of action against all persons, natural and artificial, for injury suffered by the wrong doing of the defendant. But death ended the claim. The right of action did not survive. Lord Campbell's act saved the right after death; and our act not only did this, but gave the remedy to certain persons, prescribed the measure of damages, and the time within which the action must be brought. Employees, as well as others, were within the provision of the act. But there were certain rules springing from the relation of employees to the master and his other employees—fellow servants. Thus the law was when sec. 193 of the constitution prescribed the rights of employees of railroad · corporations—now of all corporations—and the remedy in case of their death. This clearly took them out of the operation of § 663, which refers alone to death, while sec. 193 embraces both life and death; defining the right of recovery during life, and securing survival to legal or personal representatives—administrators and executors—after death. This covers the whole ground, and is exclusive as to the rights of these employees. The statute (§ 663) is superseded as to them. Under any other view, resort must be had to sec. 193 for the right of an employee of a corporation, and to the statute for the remedy, both as to who may sue, and what the recovery may be. If my view be correct, an employee may sue in life, and his administrator, or executors after his death, and no other can. Relatives or heirs may be beneficiaries of the recovery by these representatives, but they cannot sue, because sec. 193, the exclusive creator of rights and remedies for them, does not confer this right upon them. Under § 663, existing as § 1510 of the revised code of 1880 before sec. 193 of the constitution, all named in it might

sue. But that was not thought good enough for employees of railroads, and so special provision was made for them by sec. 193, which alone prescribes and regulates for them, whereby, necessarily, § 663, overridden by the higher law, was merged in it as to employees. If the foregoing views are wrong, and if chs. 65 and 66, laws 1898, are both válid in all their provisions, then, of course, wherein they do not harmonize the latter act must prevail. Certain it is that the adoption of the views of this opinion will avoid great confusion and much difficulty. By the other view continual controversy will exist as to which act shall be applied, and how far resort must be had to the common law, or to § 663, code, or sec. 193, constitution. Finally, it seems clear, also, in view of the preexisting law, that the word "child" does not include an adult, as in the law of descents. Loss of services must be the determining factor.