YAZOO & MISSISSIPPI VALLEY RAILROAD COMPANY v. LILLY I. SCHRAAG.

1. RAILROADS. *Master and servant. Incompetent employes. Personal injuries. Common law liability. Ch. 66, Laws 1898; ch. 87, Laws 1896.*

The decision declaring ch. 66, Laws 1898, and ch. 87, Laws 1896, unconstitutional as class legislation, because the modification of the fellow-servant rule therein contained was applied to all corporations without reference to the use of dangerous agencies in their business, does not relieve a railroad company of its common law liability for injuries causing the death of an employe when such injuries resulted from its employment, without due care, of other servants who were incompetent. *Ballard v. Cotton Oil Co.*, 81 Miss., 507, explained.

2. SAME. *Pleading. Sufficiency.*

In an action for the death of an engineer, resulting from a collision with a switch engine, a declaration alleging that the switch engine was carelessly, recklessly, and negligently ordered out of the yards by the agent of the company, who was engaged in another department of labor and made to proceed on a track which curved sharply around a high embankment at the time when a passenger train proceeding in the opposite direction was entitled to the use of the same track; that the collision was directly due to the reckless ordering out of the engine; that it was impossible for deceased who was the engineer on the passenger train to check the same after he saw the track was obstructed by another engine, which obstruction was, through the order of the agent, negligently allowed by defendant to be made on the track, is sufficient to sustain a recovery on the ground of negligence of the defendant in failing to furnish competent employes, where such negligence was established as that of a yard-master whose authority to give the order characterized him as a superior agent of the company, and the declaration was not attacked on the trial, and defendant asserted deceased's contributory negligence was the only available defense.

3. SAME. *Sufficiency of declaration. Statute of jeofails. Code 1892, § 746.*

Under Code 1892, § 746, providing a judgment shall not be reversed after verdict for any mistake or misconception of the

form of action, or for any other defect of form in the declaration, an objection to plaintiff's right to recover because of an insufficiently stated cause, and not her right to recover on a properly stated cause, is an objection to the form of pleading, which must be seasonably interposed in the trial court.

4. SAME. *Objection not made on trial.*

Where a defendant in an action for death resulting from a collision relied on the single ground of deceased's contributory negligence, it cannot, on appeal, assert the insufficiency of the declaration to state a cause of action for negligence in furnishing incompetent servants.

5. SAME. *Peremptory instruction. Objection to refusal. Generality.*

The request by a defendant for a peremptory instruction, in an action for death resulting from collision, is too general as an objection to the declaration as insufficient to state a cause of action for failure to furnish competent servants.

FROM the circuit court of Copiah county.

HON. ROBERT POWELL, Judge.

Mrs. Schraag, the appellee, was plaintiff, and the railroad company, appellant, defendant in the court below.

The death of Samuel Schraag, plaintiff's deceased husband, was caused by a collision on the 6th day of January, 1902, just below Vicksburg, on the Yazoo & Mississippi Valley Railroad, between the northbound passenger train, of which Schraag was engineer in charge, and a switch engine then engaged in switching a train of freight cars. The collision occurred about a mile and a half below the Vicksburg depot, but within the yard limits of the railroad company, and before the passenger train had reached the corporate limits of the city. At the time of the collision Schraag's engine was running northward, approaching the city, within the yard limits, at a rate of speed variously stated at from eighteen to twenty-five miles per hour. The freight train was going south, and was being pushed by an engine at the rate of about eight or ten miles per hour. The collision occurred at a curve at the apex of a pretty high hill. There was a straight line of road which

ran from a tunnel about three-fourths of a mile below the place of the collision nearly up to that point, and there the road curved to the east around the apex of the hill, and then ran straight back to Vicksburg. The evidence showed that the passenger train came out of the tunnel running about twenty-five miles per hour; that the steam was cut off, and the train ran down a grade mainly by its own impetus. While this train was making this run from the tunnel to the place of the collision there was on the other arm of this curve, and below the apex of the hill which was in the bend of the curve, a switch engine, which was working in the yard. This engine was backing up-grade south, pushing a train of thirty-one cars. One witness testified that several parties, some representing the defendant and some the plaintiff, got together and took a couple of engines down to the scene, and located them, and backed them forward and back, and then an engine was located 628 feet below the place of the accident and one at the place of the accident, and that they were then visible to each other; that the engine which was at the point of the accident was then backed northward, and then it passed around the curve of the apex of the hill, and when it reached a point 215 feet north of the point of the accident it passed out of sight of the engine, which was 628 feet below the point; that at the rate of speed at which the two trains were running they would have covered the distance between the two points of observance where neither could be seen by the other in less time than thirty seconds. William Schmidt, a witness for plaintiff, testified: That he lived in Vicksburg, was a fireman by trade, and was working for the defendant railroad company. At the time of the accident he was firing switch engine No. 42, which collided with Schraag's engine. That "all I know is that I told the engineer that it was 6:33 when we coupled to the cars, and not to go out there, and the man following me cursed me and told me all I had to do was to fire the engine, and that was at the lower end of the yard. Mr. Earp, the yardmaster, gave us the signals to get out of the way as

fast as we could. I was leaning out of the cab, and I saw No. 11 [Schraag's engine] coming out of the tunnel, and I hollered to the engineer, 'There she comes!' and he did not say anything, and I commenced getting down, and he blowed one short whistle not long before they hit. That Dart, the engineer on the switch engine, is what you call a 'green engine hand'; he had but a few nights' experience—about eight or ten nights." That there was no flag out to warn Schraag, and that, although he was looking for a collision and he saw Schraag's engine, he barely had time to jump, and save his life. That the yardmaster who ordered them out and everybody on his train were immediately discharged after the accident occurred. That, knowing that the switch engine was going out on the time of the incoming passenger train, he kept a constant lookout for that train, and knew his life was in peril, and so informed his superiors. That he had called the engineer's attention to the fact that they were on the time of the passenger train, and that he kept himself where he could see clearly and where he could jump. That there was no flagman protecting the train, and that it was the duty of the railroad company to protect such train by flags on their going out on another train's time, and also to protect the other trains. This witness' attention was called to rules 92, 99 and 99c, found in the book of rules of the railroad company, and was asked if any of these rules were observed to protect Schraag's engine. It was then admitted by counsel for defendant that these rules were not observed, and that defendant was negligent in not observing these rules. Mrs. Schraag, plaintiff, testified that her husband was forty-four years old at the time of his death, and was earning $150 per month. For the defendant, W. H. Rowell, the fireman on Schraag's engine, testified that they were running about on time on the morning that the accident occurred; that he was straightening his things around in the cab, and had gotten his broom to sweep the deck of the engine, and was at work at that up to two or three seconds before the accident hap-

pened; Schraag put his emergency brake on, and the witness lit out of the gangway; that Schraag did not put on the brake until they were right on the switch engine; that it would take from 600 to 800 feet, with every condition favorable, to stop a train such as Schraag was pulling that morning, on the grade where this accident happened.    On cross-examination this witness stated that Schraag blew his whistle just as he came out of the cut, as he always did, shut off the steam, just as usual, and applied the surface air as usual.

"*Q.* Will you just describe in your own language how this thing happened that morning—what you were doing, and what you saw there?

*A.* Everything that I saw to the time it all happened was the deck of this engine, until he put the air on the emergency.  I kinder slightly looked up at him, and he seemed to be trying to put the reverse lever back, and I immediately went to the gangway, and the engine struck before I could get off.

*Q.* When you looked up, what did you see Mr. Schraag doing?

*A.* He was bending over in this position, and it seemed to me that he was trying to pull the lever back.

*Q.* Did he not have the lever?

*A.* I think he had hold of it.  He was in a position to have hold of it."

Joe Lilly, a practical railroad engineer, testified, in reference to the rules under which the trains were operated on the Illinois Central Railroad, that a train of the kind Schraag was pulling could be stopped, under favorable conditions, between 800 and 1,000 feet.  Holmes Rodgers, a railroad engineer, testified to practically the same thing.  P. Ryan, a witness for the defendant, testified that he had been in the employ of the defendant company as a railroad engineer for some time; that a train like Schraag's, with all conditions favorable, might be stopped within 800 feet, but that it was very hard to tell just how far it would take to make an emergency stop; that it was com-

paratively easy to tell the distance in which the regulation stops could be made, but very difficult to calculate with any degree of precision upon an emergency stop for a train like this; that it might require 1,200 or even 1,500 feet, to use the exact words of the witness, "I would hate to place my calculation on anything on an emergency stop."

"*Q*. You would not undertake to say, in an emergency stop, that you could stop in any given number of feet?

*A*. No, sir."

Tom Crammer, a witness for defendant, testified that he was the conductor of the train which was being pulled by Schraag at the time of his death; that Schraag was just a few minutes behind time at the time of the accident, but that was no unusual condition; that Schraag had the right over all trains; that he was a competent and careful engineer, and was making no effort to make up the few minutes which he was behind, and doing nothing out of the usual routine at the time of the accident. There was verdict and judgment for plaintiff for $15,000.

*Mayes & Longstreet*, and *J. M. Dickinson*, for appellant.

This suit was brought by the widow. It was based on the constitutional rule in regard to injuries caused by the negligence of co-employes who are engaged in a different department of labor or in a different work, or on a different train. Such a suit cannot be maintained by the widow, even although the company might be liable.

The court will note that this is not a case like the Woolley case, where the injury was charged to have originated by an improperly constructed or otherwise defective track; but, as the declaration expressly avers, the negligence charged is the negligence of the employes of the company in charge of the yard and the switch engine in ordering and permitting such switch train out upon the main line at the time when the northbound

passenger train was about due, and thereby producing the collision.

It is clearly such a case as prior to the enactment of the new rule by the constitution could not have been maintained at all; this fact is plainly recognized by the care with which the pleader in drafting his declaration invokes the constitutional language, even putting it in quotation marks.

In this state of the case the law is well settled, and the two controlling decisions are *Bussey* v. *Railroad Co.,* 79 Miss., 597; *Ballard* v. *Miss. Cotton Oil Co.,* 81 Miss., 507.

We have said that this case was brought under the constitutional rule; to speak more precisely, it was clearly brought under chapter 66 of the laws of 1898, which this court declared to be unconstitutional and void in toto in the Ballard case, *supra.*

The action not being maintainable under chapter 66 of the acts of 1898 because that chapter is absolutely void, the question arises whether it is maintainable under any other statute or constitutional provision of this state.

It is certainly not maintainable under chapter 87 of the acts of 1896, for the reason that the decision in the Ballard case effectually disposes of that chapter also. It is liable to precisely the same constitutional objection. We hardly think it probable that the appellee will invoke this chapter in support of her recovery.

The action cannot be maintained under sec. 663 of the code, which is Lord Campbell's act, and this is settled so thoroughly as not to need argument. *Railroad Co.* v. *Hunter,* 70 Miss., 471; *White* v. *Ry. Co.,* 72 Miss., 12; *Woolley* v. *Railroad Co.,* 77 Miss., 927; *Bussey* v. *Railroad Co.,* 79 Miss., 597.

It, therefore, is settled law in this state that in order that the common law liability shall apply, there must be a defect in the track itself for which the company, in its corporate capacity, is directly liable as in other cases of defective appliances; but where the track is otherwise in good condition, and it is dangerous only because obstructed by the presence on it at an im-

proper time of rolling stock of the railroad company, placed there or allowed to get there, by the intervening negligence of employes, the common law liability does not exist, and the only liability is that of the constitution and the resulting statutes subsequently enacted.

The widow, therefore, having no right to sue in such case under section 193 of the constitution, nor yet under section 3569 of the code, the only question remaining is whether she is enabled to sue by section 2 of chapter 65 of the laws of 1898. That section provides that this act (that is, chapter 65), "shall apply to all personal injuries of servants or employes received in the service or business of the master or employer, where such injuries result in death."

Now, in the Bussey case, *supra,* this court expressly held that chapter 65 is nothing but an amplification of Lord Campbell's act, and has no relation whatever to any case of liability arising under the constitution. It held that the two chapters, 65 and 66, related to entirely different subjects matter; that there was no confusion of boundaries between them. It held that chapter 65 related only to common law liabilities, while chapter 66 related exclusively to those liabilities which were originated by the constitution and as conferred by it. The liability alleged in the case at bar indisputably falls in the latter class; and, therefore, unless this court is prepared to overrule the Bussey case, it is beyond question that chapter 65, neither section 1 nor section 2, has any relation to the case at bar. In that decision, this court is careful to explain the applicability and scope of this very section 2. It was there urged upon the court that the view taken by his honor in the trial court in the original decision of the Bussey case was correct, because this very section 2 showed in express terms that the remedies therein provided were to be applied in the case of all injuries to servants or employes, even where such injuries should result in death. But this court said "no," that that statute only applied, and was by the legislature only intended to apply, to that class of cases where the

death of the employe was caused by the negligent act of the company itself, and it did not apply in any case where the negligence was not of that character attributable by the common law to the corporation, but was the intervening negligence of a fellow-servant—the fellow-servant being the common law fellow-servant.

It follows, therefore, as a necessary result that even if the company in this case was liable for the death of Mr. Schraag, the liability is not to the widow, and this judgment must be reversed for that reason.

In addition to what has been said above, it is extremely questionable whether the legislature, in view of the declaration of section 193 of the constitution that "Where death ensues from any injury to employes, the legal or personal representatives of the person injured shall have the same rights and remedies," etc.—could by statute extend the right to recover in such case to any person other than an executor or administrator, or, to put it more narrowly, whether it could extend the right of recovery to the widow.

Judge Calhoon, in his dissenting opinion in the Bussey case, expressly declared that such legislation would, in his judgment, be unconstitutional. And the recent decision of this court in the case of *Allen* v. *Alliance Trust Co.,* goes to support the authority of that dissent.

It may be argued with great force that inasmuch as the right to recover did not exist at all until the constitution gave it, then when the constitution in giving it declared who should recover, that was tantamount to a constitutional declaration that none other might recover.

It is, however, not necessary to run out this contention, for the reason that, as we have shown above, the legislature has not yet undertaken in this class of cases to confer the right of action upon the widow in any statute except in chapters 87 of the laws of 1896 and 66 of the laws of 1898, both of which are unconstitutional and void in toto.

Effort is made to avoid this point and to excuse Mr. Schraag's disregard of the rule, by showing that he was running at the customary rate of speed at that place, and doing what had been frequently done by him before, and what was done commonly. But this is no answer. 3 Elliott on Railroads, sec. 1282; *Railroad Co., v. Rush,* 71 Miss., 987; *Martin* v. *Railroad Co.,* 77 Miss., 720; *Railroad Co.* v. *Myers,* 19 Am. & Eng. Railroad Cases (N. S.), 776; *Railroad Co.* v. *Wallace,* 76 Tex., 636; *Green* v. *Brainerd,* 27 Am. & Eng. Railroad Cases (N. S.), 87.

The court below erred in refusing the second and third instructions asked by the defendant.

These instructions were based on the idea that if Schraag instead of keeping a lookout for himself after coming out of the tunnel, entrusted it to his fireman to keep a lookout and the fireman failed to do so, and if by keeping such lookout the fireman could have seen the switch engine in time to have avoided such collision, the jury should find for the defendant.

These instructions should have been given. The uncontradicted proof in the record was that the fireman was under Schraag's control.

These instructions, therefore, were intended to present, and did present, the case of what is left of the fellow-servant doctrine after the modification of it by our constitution and statutes.

The constitutional rule has no operation here, for the reason that it is not applicable to the particular instance. This engineer and fireman were running the same train, on the same engine. They were not running different trains; they were not engaged in different departments of labor.

The proposition sought to be submitted to the jury was that if Schraag relied upon the fireman to keep a watchout and the fireman failed to do so, the defendant won out under the old common law fellow-servant doctrine, and it was a correct exposition of the law.

It is an admitted fact that the fireman did not keep a lookout. He himself admits it. He says that he was engaged in sweeping

·off the deck of the cab. The fact is, he was running into Vicks-burg within a mile and a half of his stopping place. Sweeping ·out his cab was a thing in no wise connected with the running of his train. It was a simple process of cleaning up, which ·could just as well have been done after the arrival of the train at Vicksburg, and which should have been so done.

It is perfectly manifest that there was no necessity for that ·diversion of the fireman's attention, and it is not in this case pretended that there was any necessity for it.

So, even if the plaintiff does not lose because of the manifest contributory negligence on the part of Schraag, this case ought to be reversed because there should have been submitted to the jury the question whether the omission of the fireman to attend to his duty and keep a lookout did not cause the collision.

The second instruction given in behalf of the plaintiff is as follows:

"The court further instructs the jury for the plaintiff that Schraag had a right to rely upon the rules of the company being enforced; and this fact, in connection with all the other evidence in the case, should be considered in determining whether or not he was guilty of contributory negligence.

The manifest purpose and the only object which could be · accomplished by this instruction was to convey to the minds of the jury the idea that because there were certain rules of the company which required the track to be kept clear ten minutes before the incoming of the passenger train, so as to give the passenger train the right of way; that Schraag, the engineer, in running into the yards had a right to rely upon the observance of that rule by the yardmaster, and had a right because ·of such reliance to relax the vigilance imposed upon him, both by the law and by the rules of the company. Such was the manifest object of the instruction, and such must have been its necessary operation.

The fourth instruction is also vicious. It runs as follows:

"In the event the jury shall find for plaintiff, it is their duty

to find a verdict for such sum as will be fair and just to her for the injury resulting from the death of her husband, not to exceed the sum sued for in this case."

Within the $25,000 limit indicated by the final clause, this instruction turned the jury loose, to do what? They were required as "their duty" to assess a sum which should be "fair and just to her," and eliminated from the instructions all restriction to the assessment of those damages which were compensatory only. There is absolutely no reference to the evidence in any shape.

Mr. Schraag was killed instantaneously; there was no element of suffering to him, either of body or mind. The widow is entitled to recover purely compensatory damages, not including mental suffering, loss of society, etc.

The jury are not required by that instruction to take into consideration any element of fairness or justice to the defendant. In effect they are turned loose, to be controlled only by their sympathetic feelings for the widow. It is within the principle of the case of *Yazoo, etc., Railroad Co.* v. *Smith,* decided by the court at the present term, where a judgment was reversed because the jury were instructed that they might find such damages as they should see fit.

Where the plaintiff undertakes to have the jury instructed as to the basis of recovery, the instruction should be more definite than the one here given; and the jury should not be turned loose with what is, in effect, *carte blanche,* the only restriction being their own conception of what is fair and just to the plaintiff, without any limitations as to the standard by which fairness and justice are to be measured, except sympathy. *Quincy Co.* v. *Schulle,* 71 Fed. Rep., 487; *Martin* v. *Johnson,* 89 Ill., 537; *Railway Co.* v. *Chisholm,* 79 Ill., 584; *Railway Co.* v. *Fravier,* 19 Ill., App., 92; *Haskett* v. *Small,* 16 Ind., 81; *Railway Co.* v. *Shook,* 3 Kan. App., 710; *Griffith* v. *Depew,* 3 A. K. March (Ky.), 177; *Varillat* v. *Railroad Co.,* 10 La. Ann., 88; *Daily Post Co.* v. *McArthur,* 16 Mich., 447; *Morrison* v.

*Yancey,* 23 Mo. App., 670; *Iron Works* v. *Barber,* 102 Pa. St., 156; *Sanderson* v. *Coal Co.,* 102 Pa. St., 370; *Girdner* v. *Taylor,* 6 Heisk. (Tenn.), 244.

This instruction is not cured by the sixth for defendant. Even this sixth instruction does not restrict the jury to the ascertainment of an amount from the evidence. Moreover, so far as it goes, the two are in conflict.

*J. S. Sexton,* and *Johnston Armstrong,* for appellee.

The declaration alleges that the injury resulted from the reckless ordering out of the switch engine by defendant's servant at a time when the incoming passenger train might at any moment collide with it, the track, besides being the same on which the passenger train would come in, making a sharp curve around a high embankment in such manner as to cut off the view along the track from both directions.

The declaration does not employ the word "fellow-servant" from beginning to end, nor will that word be found in any instruction asked by the plaintiff in the court below, and both the declaration and the evidence in the case fix the responsibility in this case where it belongs, and that is upon the defendant company.

It is true that the declaration refers to the agent and servant of the defendant company by whom engine No. 42 and the train of cars was ordered out, as "engaged in another department of labor," and "about a different piece of work," and it may be claimed that these terms are some of the terms used by the constitution as descriptive of that class of fellow-servants whose negligence, resulting in injury, will furnish a cause of action to an injured fellow-servant, and this is true, but the terms are equally applicable to "a superior agent or officer" (the yardmaster, for instance), who is "engaged in another department of labor" or "about a different piece of work." And if plaintiff, by her declaration, had been seeking to recover on account of the negligence of Schraag's fellow-servants, and

to have limited her declaration to that, she would doubtless have referred to the negligence of his fellow-servants "on another train of cars" (meaning the switch engine crew), and no such terms or reference can be found in the declaration.

In this connection we call the court's attention to the fact that there is no demurrer to the declaration found in the record, and if it be granted, as it is not, that the declaration omitted "the averment of any matter without proving which the jury ought not to have given such verdict, or for setting forth by way of recital any matter which ought to have been set forth by averment," such omission, as well as "any other defect of form in the declaration," was cured by the verdict in the case under § 746 of the annotated code of Mississippi, known as the "Statutes of Jeofails." See, also, Code 1892, § 718; *Holmes* v. *Preston,* 70 Miss., 152.

Again referring to the declaration, it will be seen that the plaintiff does not claim damages by reason of the fact that John Dart, the engineer on engine No. 42, "carelessly, recklessly and negligently" pulled out said engine of his own motion and caused the collision, but the complaint is that said engine and the train attached thereto "had been carelessly, recklessly and negligently ordered out of the yards of said company by the agent and servants of said defendant company." The word "agent" is not prefaced by the word "superior," but the fact that the agent, whose conduct is complained of, "ordered" the engine and cars which collided with Schraag's engine "out of the yards of said company" and that his orders were obeyed, carries with it the necessary implication that he was such "a superior agent or officer" of the defendant corporation as is referred to in sec. 193 of the constitution, whose negligence, resulting in injury, would furnish a cause of action to an employe of said corporation under said section of the constitution, or without reference to the same, because, as we understand the law, the negligence of an agent of a corporation, exercising such powers as are given to the yardmaster of the defendant

corporation by its rules, which were offered in evidence in this case, in sending out a green engineer, such as Dart was shown to be, on an engine overloaded with a heavy train of cars on an up-grade, in being without a watch on such a vital occasion as this, in sending out an engine without a headlight in proper condition, and in giving the high ball signal to go in the direction of an approaching train around a curve as rapidly as possible, would render such corporation liable under the well-established doctrine that a master must furnish competent employes, as well as proper appliances, and take proper precautions to prevent injury to his servant, without refernce to the constitutional provisions announced in said section 193.

In the case of *White v. Railway Co.,* 72 Miss., 12, which was an action brought by a mother for the death of a son, Whitfield, justice, delivering the opinion of the court, used the following language: "The ground of liability is the common law duty of appellee to provide safe machinery and appliances for its employes. The remedy. to enforce this liability in favor of appellant in the case made in this record is based properly on Code 1892, § 663. The negligence alleged is not the negligence of a co-employe, but the negligence of the company itself. *Railroad Co.* v. *Hunter,* 70 Miss., 471, therefore, does not apply. The ground of liability on which this case is rested existed before the constitution of 1890 and is wholly independent of it. That instrument did not take away any existing ground of liability; it added new ones theretofore denied by our laws."

In that case, the negligence complained of consisted in defective appliances (the miller draw-head). There was the usual dispute as to whether the appliance was a safe one, in reference to which the court used the following language: "Ought not the question of fact as to the sufficiency and safety of these appliances to have been submitted to the jury? The law is imperative in demanding that railroad companies shall furnish its employes engaged in the hazardous work of coupling

cars safe and sufficient appliances." 2 Thompson on Negligence, 989.

In the case of *Railroad Co.* v. *Woolley,* reported in 77 Miss., 941, this court followed the decision above referred to, and in this case the widow instituted suit for the death of her husband, just as we have done in the instant case. Calhoon, justice, delivering the opinion of the court, said: "The death of plaintiff's husband, having occurred . . . before the Act of 1896, and he being an employe of the company, his widow could not sue basing her action on sec. 193 of the constitution as to fellow-servants, as was held in *Illinois, etc., R. R. Co.* v. *Hunter,* 70 Miss., 471. This she concedes, and therefore she places her right to sue on the case of *White* v. *Louisville, etc., R. R. Co.,* 72 Miss., 12, which holds that she may sue where her claim is not on the ground that the death was caused by the negligence of a fellow-servant, but because of the negligence of the company in not providing a safe railway. Such right to sue for the company's negligence that case holds to exist independently of the constitutional provision. It follows that if the negligence of the company showed a want of ordinary care and was the proximate cause of the death in this case, Mrs. Woolley had a right of action, otherwise not."

From the cases just cited, it is manifest that "if the negligence of the company showed a want of ordinary care, and was the proximate cause of the death in this case," Mrs. Schraag had the right to recover independent of the constitutional provision contained in sec. 193 of the constitution, and it is equally manifest that she has the right to recover under said constitutional provision, as developed by the acts of 1898, ch. 65, sec. 2, which provides: "This act shall apply to all personal injuries of servants or employes received in the service or business of the master or employer where such injuries result in death."

Referring to this section of the act of 1898, Whitfield, C. J., delivering the opinion of this court in the case of *Bussey* v.

*Railroad Co.,* 79 Miss., 606, used the following language: "This section . . . . expressly applies the principle of Lord Campbell's act—recovery for injuries resulting in death—to all employes, when the injuries were due to the negligence of the master. It was part of a statutory scheme that had never assumed to deal with injuries caused by the negligence of fellow-servants in any way whatever and it was not dealing with them. . . . The purpose of the legislature was plain. It was to observe the mandate of this most wholesome provision of the constitution, and so make effective the remedies for the new rights by it created, and also to broaden and develop the remedies for the rights provided for by Code 1871, § 676, and of the Revised Code 1880, § 1510—the initial form in which the code of 1857 and that statute left them—to the present completeness furnished by Laws 1898, ch. 65." Railroads are required to exercise prudence and judgment in the selection of their employes on the same principle which required them to provide safe machinery and appliances, and the failure to do so would render them liable for injuries resulting from negligence in this respect.

It seems from this record that Schraag had to run the whole gamut of negligence, indifference, incompetence and recklessness. Not only was the road over which he was called to run improperly constructed, and not only did he have to take the risk incident to the employment of a green engineer, but that engineer was subjected to the foolhardy directions of a yardmaster who must have been either drunk or insane, because it is impossible upon any other theory to believe the undisputed evidence found in this record and to believe that a sane and sober man, occupying Earp's position as yardmaster, would have been found without a watch, and would have sent out a green engineer in charge of an exceedingly heavy train of cars on a heavy up-grade on a high ball signal in the face of the warning given by the fireman, Schmidt, who pulled out his watch and warned the engineer "not to go out there." *Railroad*

*Co.* v. *Patton,* 31 Miss., 156; *Railroad Co.* v. *Allbritton,* 38 Miss., 242; *Railroad Co.* v. *Field,* 46 Miss., 573; *Hicks* v. *Railroad Co.,* 41 S. C. Rep., 753; 3 Woods Railway Law, sec. 389; *Railroad Co.* v. *Hughes,* 49 Miss., 287; *Morbey* v. *Railroad Co.,* 89 N. W. Rep., 105.

It will be seen that the defendant by one instruction invited a verdict, if the jury believed that Schraag "was killed in part by the negligence of the switch engine crew;" and by another, it invited a verdict if the jury believed from the evidence that "Schraag was killed by the negligence of the yardmaster or those managing the switch engine or by the negligence of both combined," provided only that Schraag himself was free from having contributed to his own destruction.

Not only did defendant invite a verdict under the conditions above stated, but it absolutely admitted the negligence both of the yardmaster and the switch engine crew.

The rules of the Y. & M. V. R. R. Company were offered in evidence and admitted to be the "book of rules in use by the defendant company." Counsel for plaintiff called the witness', Schmidt's, attention to a number of these rules to identify the same, and asked him whether or not they were observed that morning to protect Schraag's engine. Whereupon the witness. answered in the negative, and counsel for defendant admitted that they were not, and also admitted that they (defendant's servants) were guilty of negligence.

By reference to the previous testimony of this witness it will be seen that he was examined at length both as to the negligence of the switch engine crew and the negligence of the yardmaster, and it was so perfectly palpable that all hands were negligent in every respect, that in order to get rid of any further investigation along this line, counsel for defendant admitted that "they (meaning both the yardmaster and switch engine crew) were guilty of negligence," but if the word "they" in this admission could be limited to the switch engine crew and not embrace the yardmaster, as it cannot, still by the 9th instruction

asked by the defendant, the negligence of the switch engine crew alone, thus admitted, would render the defendant liable, provided Schraag was not guilty of negligence contributing to his death.

It is elementary learning that a party cannot occupy inconsistent positions in the trial of a cause in court, and if there is anything settled in the state of Mississippi, it is that the defendant cannot complain of a verdict which responds to an instruction asked by it in the court below.

In the case of *L. & L. & G. I. Co.* v. *Vann Os & Shuster,* 63 Miss., 440, Cooper, C. J., delivering the opinion of the court, used the following language: "The second instruction given for the plaintiffs, and the second for the defendant, announced practically the same rule for the guidance of the jury in determining what quantity of evidence was required by law to warrant it in finding a verdict for the defendant upon the ground that the plaintiffs had set fire to the store and burned their own goods. If the rule was erroneous it was invoked as well by defendant as the plaintiffs, and the defendant cannot assign it for error."

This case was followed by the case of *Wilson* v. *Zook,* 69 Miss., 694, where the following quotation from the syllabus correctly announces the rule: "One cannot assign for error the action of the trial court in giving an instruction for the opposite side, when he asked and obtained, as announcing in the law of the case, an instruction to the same effect."

The same rule is announced in the case of *Clisby* v. *Railroad,* 78 Miss., 937: "An appellant cannot complain of error in an instruction given at his instance, nor of a conflict in instructions produced by an erroneous one so given; nor of an instruction more favorable to him than the law warranted."

In the above case the court also adds: "It has been held that an appellant cannot complain of an erroneous instruction asked by him. *Insurance Co.* v. *Von Os,* 63 Miss., 431; *Wilson* v. *Zook,* 69 Miss., 694 (2 Thompson on Trials, p. 1750); *Flower*

v. *Helm,* 29 Mo., 324; *Carroll* v. *People,* 136 Ill., 456; *Williams* v. *Southern Pacific Railroad Co.,* 110 Cal., 457; *Reordon* v. *Missouri Pacific Railroad Co.,* 114 Mo., 384; *Lobdell* v. *Hall,* 3 Nev., 515."

The jury have passed upon the question of contributory negligence and their finding is fully justified by the facts.

Argued orally by *Edward Mayes,* for appellant, and by *Johnston Armstrong,* and *James S. Sexton,* for appellee.

WHITFIELD, C. J., delivered the opinion of the court.

We think the question of contributory negligence in this case was properly left to the jury, and has by the jury been properly settled. The evidence shows a case remarkable for the extent and variety of negligence on the part of the defendant railroad company. We have given the entire record the most careful consideration, and, unless the case is one in which no recovery at all is warranted under any declaration possible to be framed, this judgment must be affirmed. Perhaps the most earnest insistence of learned counsel for appellant at this bar is upon grounds not presented at all in the court below.

We may clear the way to decision by saying at once that, in so far as the declaration in this case seeks to recover under chapter 66, p. 84, of the laws of 1898, or chapter 87, p. 97, of the acts of 1896, it is not maintainable, because those acts have been declared unconstitutional in *Ballard* v. *Miss. Cotton Oil Co.,* 81 Miss., 507 (34 So Rep., 533; 62 L. R. A., 407). Counsel for the plaintiff below insists that he has a right of recovery on common-law grounds because of a defective track, the argument being that the obstruction of the track constituted a defective track within the meaning of the rule of law upon that subject, and it is stated in aid of this view that while this track, with its peculiar construction—around a sharp curve and a high hill— might have been a safe track when Vicksburg was a small place, it cannot be held to be so now, in view of the vast advance

in the facilities for transportation, and in view of the many tracks made necessary by the growth of the city. This contention, on the evidence in this case, is manifestly untenable. It is perfectly plain that the injury here was not due to any defect in the track itself, constituting it, within the law on that subject, an unsafe roadway; but to the grossly negligent occupation of the track (safe enough in itself) by this switch engine crew on the time of the passenger train.

It is next insisted by counsel for appellee that plaintiff is entitled to recover under either of two grounds: First, on the ground that the injury was directly due to the negligence of the yardmaster, a superior agent of the defendant corporation, under section 193 of the constitution; and, second, that said negligence of said superior agent or officer, and of the engineer Dart, furnishes a cause of action to the deceased employe, without reference to section 193 of the constitution, on the common-law ground that this yardmaster and engineer were manifestly incompetent employes, and not selected with due care; and that the negligence of the said yardmaster exercising the powers he exercised, under the rules of the corporation in evidence in this case, in sending out a green engineer, such as Dart was plainly shown to be, and an engine overloaded with a heavy train of cars, thirty-one in number, on a steep up-grade, and in being without a watch upon such a vital occasion as this, in sending out a switch engine without a proper headlight, and giving "the high ball signal" to the switch engineer to go, in the direction of a very rapidly approaching train, around a curve, as rapidly as possible, at a time when the passenger train was practically due, indubitably stamped him, the said yardmaster, as being an incompetent and unfit employe to be intrusted with such powers, and fixed upon the corporation itself inescapable negligence in intrusting such an employe with so important a post. And it is said that this last cause of action is properly brought by the widow on the common-law doctrine as to the right, and under section 2, ch. 65, p. 83, Acts 1898, as to the remedy, as held in

*White* v. *R. R. Co.,* 72 Miss., 12 (16 So. Rep., 248) ; *R. R. Co.* v. *Woolley,* 77 Miss., 941 (28 So. Rep., 26), and *Bussey* v. *R. R. Co.,* 79 Miss., 597 (31 So. Rep., 212).

We will deal with this second cause of action based on the common-law principle first; and, as to this, learned counsel for appellant conceded the soundness of the general principle contended for by appllee; that is to say, that such cause of action is maintainable by the widow under said section 2 of chapter 65, p. 83, of the acts of 1898. But they say that the declaration here does not state this cause of action at all, but is based entirely on "the intervening negligence of fellow-servants." We think learned counsel for appellant mistake the scope of the declaration and the effect of the testimony in this case. We are clearly of the opinion that the testimony in this cause makes out a clear liability on the part of the defendant company on the common-law ground just stated. The cause of action on this ground is abundantly made out by the testimony. In all the extreme applications of the fellow-servant doctrine in this state in past adjudications, one thing was yet always consistently adhered to, to wit, that the failure to select and furnish fit and competent employes was the failure of the master himself to discharge a personal duty which he owed his employes, and which he could not delegate to another; and, of course, was such negligence of the master himself as entitled the injured party to recover therefor. This negligence is established in this case beyond. controversy. The only defense, therefore, that the appellant can interpose along this line is not that the cause is not proven, but that the declaration did not specifically count on this ground; in other words, we must deal with a thoroughly established cause of liability on this ground on the proof, and then determine whether this objection on the ground of improper pleading can be made in this court for the first time.

We here set out the material parts of the declaration in its first and second counts, which are as follows:

"For that whereas heretofore, to wit, on the 6th day of

January, 1902, the said defendant, the Yazoo & Mississippi
Valley Railroad Company, was in charge of and operating
a railroad extending through the state of Mississippi, which
passed and now passes through the counties of Copiah and War-
ren, and other counties in said state, and in the operation of
said railroad the said defendant, at the time aforesaid, had in
use, and running thereon locomotives and cars, propelled by
steam, and the plaintiff's husband, Samuel Schraag, was a loco-
motive engineer in charge of the northbound passenger train
known as No. 26, which was due in Vicksburg at 6:45 A. M.,
and was due at the freight yard of said defendant company in
the city of Vicksburg at 6:40 A. M. The said defendant also had,
in use and operation, in the city of Vicksburg, in said county
of Warren, at that time, a freightyard, in which yard the de-
fendant company was in the habit of making up trains of cars
to be sent out in its service, and doing such other things as were
convenient and necessary to the operation of its business. On
said 6th day of January, 1902, the said Samuel Schraag, de-
ceased, was in charge of the engine hauling said train No. 26 be-
longing to the defendant corporation, and under the directions
of said defendant company was hauling said train with a load
of passengers thereon to said city of Vicksburg in Warren
county, Miss., and he was entitled, under the rules of said com-
pany, to a clear and unobstructed track throughout said county
of Warren to his destination at said city of Vicksburg, and
while so engaged, and exercising due care for his own safety
and that of his crew and passengers, his engine going north
collided, in said county of Warren, in the state of Mississippi,
with engine No. 42, and a train of over thirty freight cars in
charge of one John Dart, engineer, which said engines and cars
belonged to and were being operated by the agents and servants
of the defendant company at the time, and which had been care-
lessly, recklessly, and negligently ordered out of the yards of
said company, in said county of Warren, by the agents and
servants of said defendant company who were engaged in 'an-

other department of labor,' and 'about a different piece of work,' and which were going south on the track of the defendant company, on a curve of the defendant's track, at a great rate of speed, at the time when the said train, No. 26, in charge of said Samuel Schraag, was entitled to the right of way and a clear track, and the said Samuel Schraag was so bruised, mangled, torn, and scalded by such collision, occasioned as aforesaid, that he died within a few minutes thereafter from the effects thereof, after suffering the most excruciating agony.

"Plaintiff further avers that said collision occurred at a point where the track of the defendant company runs close to the edge of an embankment from sixteen to twenty feet high, and said Schraag, by most heroic efforts, managed to get his train in check, and to hold the same on the track, and thus save the lives of his passengers and the property of the defendant company then in his charge, though it was impossible for him to do this and save his own life after he first saw that the track to which he was entitled was obstructed by another engine and train of cars so negligently allowed by the defendant company to occupy said track at the time he was entitled to the same free from all obstructions."

It is true that the declaration in the first count does not use the words "superior agent," but it expressly says, which said engine "had been carelessly, recklessly, and negligently ordered out of the yards" by the agents and servants of said defendant company who were engaged in "another department of labor." The declaration expressly recites that Schraag's train was due at the yards at 6:40 A. M.; that the defendant had a freight yard, "in which yard the defendant company was in the habit of making up trains of cars to be sent out in its service, and doing such other things as were convenient and necessary to the operation of its business;" and it further expressly avers that the switch engine No. 42, with a train of thirty freight cars, was so ordered out by the agent aforesaid, and the collision is directly charged to be due to this reckless ordering out of this

engine on the track by the company's negligence. We do not think it at all a strained construction that the declaration does charge, in effect, that this ordering out was by a "superior agent," having the right to so order, and ordered out, too, in the very time when the passenger train was entitled to a clear track, and ordered out, furthermore, on a track which curved very sharply around a very high embankment; and it will be specially noted that the declaration, in the second count, expressly avers that it was impossible for Schraag to get his train in check after he first saw that the track, to which he was entitled, was obstructed by another engine and train of cars, and that such obstruction was, through the order of the superior agent, negligently allowed by the defendant company to be made on said track at the time when he was entitled to the same free from obstructions. Here, indeed, is a direct charge that the collision was due to the negligence of the defendant company, and not to the negligence of any fellow-servant. It is true, it is a very general charge that it makes; that it does not, in so many words, say that the specific negligence of the company consisted in furnishing incompetent employes; but the case falls, in this regard, precisely within that of *Railroad Co. v. Price*, 72 Miss., 869 (18 So. Rep., 415). It must be remembered that no demurrer was interposed to this declaration, and that no objection was made on the score of insufficient pleading in any way, and that no objection was made to the introduction of testimony that makes out the cause on this common-law ground, at any time during the trial, on the ground of variance. Had any objection been made, at one time or another, it would have been immediately remedied by a proper amendment. In the Price case a recovery was insisted upon because the railroad company had failed "to instruct its inexperienced switchman as to how a particular coupling should be made."

The declaration in the case did not specify this as the ground of recovery. There, just as here, no objection was taken to the declaration on this ground in the court below,

nor was there any objection on the ground of variance be-tween the declaration and the proof; and yet the case pivoted precisely and exactly upon this proposition: that the plaintiff was entitled to recover solely, if at all, on the ground that the defendant company had so failed "to instruct its inexperienced switchman how to make this coupling." When the case got to this court for the first time, that objection was pressed, and we met it through Woods, J., as follows: "Just here, however, the appellant contends that the failure of the railroad to instruct its inexperienced switchman as to how this particular coupling should be made cannot be considered by us, because that was not the ground of complaint made by the declaration, and is not the negligence charged. The declaration was defective in not distinctly averring the inexperience and ignorance of appellee, and the failure of appellant to instruct or warn him; but it did aver, in general terms, injury because of appellant's negligence in furnishing dangerous cars or appliances. The appellant pleaded the contributory negligence of appellee, and he replied, denying the plea. On trial, anticipating appellant's evidence that he had placed his arm between the bumpers, where in-evitably it would be crushed when the cars came together in making up the train, the appellee offered evidence to show, in avoidance of the effect of this anticipated evidence, that he was inexperienced and ignorant of the proper method of making the coupling that day required of him, and that he was not warned of the extrahazardous nature of the service required by his superiors, nor instructed at all how to make the coupling. The railroad did not object to the introduction of this testimony, but joined issue with its adversary, electing to take the chances of a favorable verdict on the whole case as presented, including this evidence of which it now complains. The averments of the declaration did not show one cause of action, and the com-plained-of evidence supports another and different cause of action. The appellant did not then so think. It did not object to this evidence as incompetent, and, if it had, the court would

have permitted the appellee instantly to amend his defective pleading. Section 718, Code 1892, declares that 'a variance between the allegation in a pleading and the proof shall not be deemed material, unless it shall actually mislead the adverse party, to his prejudice, in maintaining his action or defense upon the merits; and where it shall not be shown to the satisfaction of the court that the party has been so misled, an immediate amendment of the pleadings may be made without costs, and without delaying the cause. If the party have been so actually misled, an amendment may be allowed on such terms as shall be just.' Among many other provisions of our statute of joefails (sec. 746, *Id.*), it is declared that a judgment shall not be reversed, after verdict, 'for omitting the averment of any matter without proving which the jury ought not to have given such verdict.' In considering this statute it was said in *Holmes* v. *Preston,* 70 Miss., 152 (12 So. Rep., 202) : 'If a defectively stated case is well proved, the verdict cures the defect of the pleading, and so, after verdict, nothing to the contrary appearing in the record, it would be presumed that a case was proved entitling the successful plaintiff to the verdict secured,' etc. See the same case, 71 Miss., 541 (14 So. Rep., 455)."

That case covers this precisely. This declaration cannot, under any reasonable construction, be said to show one cause of action, and the evidence to support another and different cause of action. The declaration does, though defectively, state as one of the grounds of recovery the negligence of the defendant company itself; nay, more, it specified that that negligence consisted in ordering out this switch engine recklessly, carelessly, and negligently, on the track, at the time when the passenger train was due. This ordering out was made by the superior agent—some one having the right to order—and this agent was manifestly incompetent. It is too late now to object, on the single ground to which appellant must be confined, that, as a matter of pleading, the declaration did not at all state this ground of action; too late for two reasons: First, because we

think it does state such general negligence quite as sufficiently as it was stated in the Price case; second, because this is not a case, as insisted by learned counsel for appellant, in which the appellee has no cause of action, however she might frame her declaration. Counsel for appellant attempts to meet the Price case, *supra,* by citing the cases of *Burke* v. *Shaw,* 59 Miss., 443 (42 Am. Rep., 370) ; *Vaughn* v. *Hudson,* 59 Miss., 421; *Gabbert* v. *Wallace,* 66 Miss., 618 (5 So. Rep., 394.) ; *Cole* v. *Coon,* 70 Miss., 634 (12 So. Rep., 849). Counsel correctly cited these cases as holding that, where a question goes to the very foundation of plaintiff's right of action, it may be raised in this court for the first time. That doctrine is perfectly sound, but that is not the case here. This is not a case where Mrs. Schraag has no right of action at all; it is a case where the testimony shows that she is clearly entitled to recover on the ground indicated. Counsel's objection, in short, "has this extent—no more:" that she is simply not entitled to recover under this declaration; and, that being the extent of his objection, he was bound under sections 718, 746, of the code of 1892, to interpose it seasonably in the court below, because it is at last nothing but an objection to the form of pleading; objection, emphatically, not to the plaintiff's right to recover upon a properly stated cause, but objection solely to her right to recover because of an insufficiently stated cause. *Burke* v. *Shaw* was a case in which the court held that the plaintiff had no right to recover in any form of action, because the ashes were neither the property of the foundry nor on its ground. *Vaughn* v. *Hudson* was a case in which the court below had ordered a sum of money —which should have been paid in part to the widow, Frances— to be paid wholly to the five children of herself and her deceased husband. This court simply said that the widow was entitled to her one-sixth part, and that in no possible view could the decree taking that from her be approved. *Gabbert* v. *Wallace* was a case in which the court held that a mortgagee could not, under any form of declaration, recover for damages tor-

tiously inflicted on the mortgaged property, when the mortgagee had no assignment of the mortgagor's right so to sue. *Cole* v. *Coon* was a case in which the court held that section 1709 of the code of 1871 was not a statute of limitations merely, but a positive statutory declaration that a tax title could not be assailed under certain circumstances; in other words, that the statute declared a legal bar to any sort of action, at law or in equity, under given circumstances, to assail a tax title. It must be plainly obvious that these cases, holding the doctrine that where the plaintiff could not, in any possible view, have a cause of action—could not, in any possible view, frame a declaration under which he could recover—have no application in a case like this, where the objection is not that Mrs. Schraag has no right of action at all, but simply and merely that she has not in this particular declaration stated a cause of action on which she could recover. Let us be clearly understood here. We do not concur in the view of counsel for appellant that the declaration does not state this ground of action at all, but we say it does state it just as fully as the Price case stated the ground of action therein. In one case, just as in the other, the declaration charges the company with negligence, but in a general way only. In neither does the declaration particularly define the specific kind of negligence, and yet in both it must be true, as held in the Price case, objection, not because of a total absence from the declaration of any charge of negligence on the master's part, but because simply of a failure to specifically state the precise negligence, cannot be made here for the first time. It may be suggested that the declaration was probably framed and the case tried in the court below before the decision in the Ballard case, and that on that account no demurrer was filed to the declaration, and no objection made on the ground of variance in the court below, and that appellant should be permitted to make the objection here for the first time. This, however, is not a tenable suggestion. Indeed, it is not urged at all by counsel for appellant. But besides all this, there is another

most potent reason against entertaining the objection here for the first time, in addition to what has been stated, and that is this: The defendant itself, in the court below, asked this instruction (No. 8), which was given: "If Schraag was killed by the negligence of the yardmaster or those managing the switch engine, or by the negligence of both combined, the plaintiff in this case could recover, and is entitled to a verdict, provided Schraag himself was free from carelessness contributing to his injury; but, if Schraag could have seen the switch engine or its headlight in time to have stopped his train and avoided the collision, the plaintiff cannot recover, however negligent the yardmaster or those handling the switch engine were. If Schraag's carelessness in failing to see the switch engine or its headlight was one of the causes contributing to his death, then this plaintiff must fail, and it not entitled to a verdict." From this instruction it is plain that defendant itself invoked the doctrine that defendant was liable if Schraag was killed by the negligence either of the yardmaster or of those handling the switch engine, or by the negligence of both combined, unless, and only unless, the plaintiff was guilty of contributory negligence. In other words, the defendant not only failed to make the point now being made against the declaration as a matter of pleading, but it proceeded, throughout the entire trial, on the manifest theory that the contributory negligence of the plaintiff was the only defense available to the defendant.

The record shows that, when the rules of the company were introduced to show that those rules had been violated by the defendant in a great variety of instances, the defendant "admitted, by its counsel, that rules 92, 99 and 99c were all violated by the defendant, and that the defendant was guilty of negligence." It added to this admission its own request for the instruction No. 8, above set out. The case, therefore, is not only one in which no exception was taken in any way to the pleading in the court below, and in which no objection was made on the ground of variance in the court below, but one in which,

in addition to all this, it actually places the cause, by said instruction 8, on the sole ground of the contributory negligence of the plaintiff. This court has held in *L. & L., etc., Co.* v. *Van Os, etc.,* 63 Miss., 440 (56 Am. Rep., 810); *Wilson* v. *Zook,* 69 Miss., 694 (13 So. Rep., 351), and *Clisby, Use, et al.* v. *M. & O. R. R. Co.,* 78 Miss., 937 (29 So. Rep., 913), that in such cases the party asking an instruction which places the defense on such single ground cannot be heard to complain here if it is held to the position it assumed in such instruction.

It is suggested in argument that appellant did raise the point in the court below by asking for a peremptory instruction. But asking for a peremptory instruction is entirely too perfunctory a mode of making so specific an objection. It was too general an objection. The court below doubtless never dreamed that this request for a peremptory instruction was meant to raise the point here pressed.

It is said, again, that the decision contravenes the Ballard case. It is in perfect harmony with the Ballard case. We held in the Ballard case that the plaintiff knew that the ladder was defective, and hence could not recover at common law, and so must recover, if at all, under chapter 66, p. 84, of the laws of 1898, making such knowledge no defense. But we held that said act was unconstitutional. Here we hold that this plaintiff can recover, not under the act of 1898, but under the common law, on the ground of the employment, without due care, by the company of incompetent employes, Dart and Earp, engineer and yardmaster. No common-law ground was involved in the Ballard case. Nothing but a common-law liability is here involved.

It is said, again, that our view contravenes the decision in the Bussey case. On the contrary, this decision reposes on that very case, wherein we expressly said (79 Miss., 609, 610; 31 So. Rep., 212): "It is said that chapter 65 has no relation to suits by employes at all—not even where the employe sues on the ground of negligence of the master alone; and the court be-

low so held, notwithstanding section 2 of said chapter 65 plainly says, 'This act shall apply to all personal injuries of servants or employes received in the service or business of the master, where such injuries result in death.' This section cannot thus be read as blank paper. It expressly applies the principle of Lord Campbell's act—recoveries for injuries resulting in death —to all employes, when the injuries were due to the negligence of the master. It was part of a statutory scheme that had never assumed to deal with injuries caused by the negligence of fellow-servants in any way whatever, and it was not dealing with them." The Bussey case, the White case, and the Woolley case directly support our view.

It is said there really is no variance, and that, if that objection had been made, it would have been shown that the evidence corresponded with the first count in the declaration. We think the variance is perfectly manifest between the testimony and both counts. The variance is in this: that, while the second count proceeds on a general charge of negligence, there is no specific allegation of the precise negligence of the company in furnishing incompetent employes. It is, in its nature and in its extent, the same sort of variance that was shown in the Price case. But it was nothing but a variance, and, to have been availed of, must have been taken advantage of in the court below. The very furthest reach of the point pressed here would simply be to reverse and remand the cause for amendment of the declaration. But it surely must be too plain for discussion that if the defect in the pleading be amendable, it must, perforce, be cured, in case of failure to object below, by sections 718 and 746 of the code of 1892, as construed in the Price case, *supra.*

We have not ourselves set out in detail the evidence, but the reporter will do that—especially the testimony of the witness, Schmidt, and the testimony showing the experiments demonstrating the inability of Schraag to have stopped his engine in time to prevent the collision after he saw the switch engine. We only add that the testimony shows that the railroad company

discharged this yardmaster and all the other employes connected with the switch-engine crew immediately after the happening of this injury.

> *On this ground, therefore, the judgment is affirmed.*

TRULY, J., dissented.